UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KUNTA GABLE and <br> SIDNEY HILL, <br>           Plaintiffs, <br> <br> v. <br> <br> <br> CITY OF NEW ORLEANS, *et al.* <br> <br> <br>           Defendants. | Case No. 23-3111 <br> c/w Case No. 23-6203 <br> <br> Motion applies to 23-6203 <br> <br> Judge Brandon S. Long <br> Section O <br> <br> Magistrate Judge Donna P. Currault <br> Division 2 |

**PLAINTIFFS KUNTA GABLE AND SIDNEY HILL'S RESPONSE IN OPPOSITION TO DEFENDANT WILLIAMS' MOTION TO DISMISS**

Plaintiffs Kunta Gable and Sidney Hill, by their undersigned attorneys, hereby respond to Defendant Jason Williams's Motion to Dismiss, Dkt. 107, stating as follows:

**INTRODUCTION**

In 1994, the Orleans Parish District Attorney's Office ("OPDA") prosecuted three teenagers—Kunta Gable, Sidney Hill, and Bernell Juluke—for a murder they did not commit. After they were accused of the crime, the OPDA failed to disclose material exculpatory evidence in violation of the defendants' rights under the United States Constitution. As a result, a jury convicted the three teenagers of second-degree murder and they served twenty-eight years in prison before their convictions were finally vacated in 2022. Plaintiffs Gable and Hill have sued the Orleans Parish District Attorney under 42 U.S.C. § 1983. Bernell Juluke filed a separate action, *Juluke v. Davis*, No. 2:23-cv-31111, which has been consolidated with this case.

In his motion to dismiss the claims against him in Gable and Hill's case, the District Attorney advances a single basis for dismissal: that the OPDA supposedly acts as an arm of the state when creating and imposing policies related to the disclosure of evidence. That argument is squarely foreclosed by *Burge v. Parish of Tammany*, 187 F.3d 452 (5th Cir. 1999), which held that Louisiana district attorneys exercise municipal authority in connection with their policies regarding the acquisition, security, and disclosure of material and potentially exculpatory evidence. The decision *Burge* is well-reasoned, directly on point, and binding—which is why ***five*** separate judges in this District already rejected the very same argument when the District Attorney raised it in other recent cases.

Despite raising numerous grounds for the dismissal of claims against his office in the companion *Juluke* case, the District Attorney's motion in *Juluke* did not gesture at the "state actor" argument he makes here. To the contrary, in his March 4, 2024 reply in support of his motion to dismiss in *Juluke*, the District Attorney flatly admitted that "***the Orleans Parish District Attorney's Office . . . is treated as an independent municipal entity*** under Fifth Circuit jurisprudence." Dkt. 99 at 1–2 & n.1 (citing *Burge*, 176 F.3d at 470) (emphasis added). The District Attorney does not offer any explanation for his about-face in this consolidated proceeding. Nor, despite requesting excess pages to address the five decisions rejecting his argument, does he identify a single persuasive reason why the Court should now ignore *Burge* and hold that the OPDA was not exercising municipal authority.

Simply put, the District Attorney was right the first time. The OPDA's *Brady* policies (or lack thereof) are municipal functions subject to challenge under § 1983. The Court should deny the motion to dismiss.

BACKGROUND

New Orleans police arrested Gable, Hill, and Juluke for the murder of Rondell Santiac on August 22, 1994. At the time, the OPDA and its attorneys routinely withheld material exculpatory evidence from the defendants it prosecuted, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. In accordance with these policies and practices, the attorneys prosecuting Gable, Hill, and Juluke withheld that: (1) claimed eyewitness Samuel Raiford initially provided a description of Santiac's killer that did not match any of the defendants, (2) police pressured Raiford to identify Gable, Hill, and Juluke in an unconstitutional line-up, and (3) Raiford committed perjury shortly before he testified in Gable, Hill, and Juluke's criminal trial. Without the benefit of this exculpatory evidence, a jury found each of the defendants guilty of second-degree murder and they were sentenced to life in prison without the possibility of parole.

When the OPDA took a second look at these convictions more than two decades later, the office concluded that the verdicts had been secured "while the jury was unaware of significant evidence that undermined the State's case and exculpated" the defendants. Compl. ¶ 114. The OPDA further concluded that Gable, Hill, and Juluke's "convictions were obtained in violation of the Constitution and may well have resulted in the conviction of three innocent teenagers." *Id.* ¶ 115. On a joint motion, Judge Tracey Flemings-Davillier vacated all three men's convictions on October 19, 2022.

After their convictions were vacated, Gable and Hill filed this suit under 42 U.S.C. § 1983. They allege, in part, that the OPDA violated their constitutional rights by withholding exculpatory evidence. Compl. ¶ 51. Jason Williams is named in his official capacity as District Attorney. *See Reeder*, 2023 WL 2771481, at *2 ("Although all of the tortious conduct . . . occurred well before

3

Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant."). Compl. ¶ 29.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is disfavored and rarely granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). When considering such a motion, courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). If the complaint contains sufficient facts to "state a claim for relief that is plausible on its face," the motion to dismiss must be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Section 1983 imposes liability on any person "who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotations omitted). Although states and their officials are not "persons" subject to § 1983 liability, a municipality may be held liable under the statute if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Because policymakers can "wear[] more than one hat," courts reviewing *Monell* claims must also conclude that the official was acting for the municipality, rather than the state, when

4

creating or enforcing the policy at issue. *Arnone v. Dallas Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022). Resolving this "dual-hat problem," the Supreme Court has held, "is dependent on an analysis of state law." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997).

In its motion to dismiss, the District Attorney claims that the OPDA was acting on behalf of the State of Louisiana when it created and maintained unconstitutional policies and practices regarding the disclosure of *Brady* evidence. But in *Burge v. Parish of St. Tammany*, the Fifth Circuit expressly foreclosed this argument:

> [I]n a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an ***independent local entity***.

187 F.3d 452, 470 (5th Cir. 1999) (emphasis added). Relying on *Burge* and other binding precedents, five separate judges in this District have rejected the District Attorney's argument in the past year.[1] For the reasons explained below, this Court should do the same.

**I.      The Fifth Circuit's holding in *Burge* is squarely on point.**

In *McMillian v. Monroe County*, 520 U.S. 781 (1997), the Supreme Court established a framework for determining whether an official is acting on behalf of a state or local government for purposes of *Monell*. *McMillian* instructs that when deciding such a dispute, the question is not whether the policymaker acts for either the state or the county "in some categorical, 'all or nothing' manner," but rather, whether the official was a final policymaker for the local government in the "*particular area*" or with respect to the "*particular issue*" underlying the plaintiff's claims. *Id.* at 785 (emphasis added). The answer to this question, the Court continued, "is dependent on an

---

[1] *See Williams v. Williams*, No. 23- cv-1922, 2023 WL 6160990 (E.D. La. Sep. 21, 2023) (Africk, J.); *Jones v. Williams*, No. 22-cv-5097, 2023 WL 3211865 (E.D. La. May 2, 2023) (Ashe, J.); *Reeder v. Williams*, No. 22-cv-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023) (Zainey, J.); *Floyd v. Dillmann*, No. 19-cv-8769, Doc. No. 219 (E.D. La. Mar. 6, 2023) (Milazzo, J.); *Smith v. Williams*, No. 22-cv-1550, 2023 WL 2263841 (E.D. La. Feb. 28, 2023) (Brown, C.J.).

5

analysis of state law." *Id.* The District Attorney concedes that *McMillian* remains the controlling Supreme Court decision on the "state actor" analysis in the *Monell* context. *See* Dkt. 107-1 at 8.[2]

In *Burge*, the Fifth Circuit applied *McMillian* to assess Louisiana district attorneys accused of an unconstitutional policy related to *Brady* evidence—the same type of misconduct allegedly committed by the same type of official sued in this case. The plaintiff in *Burge* alleged that the St. Tammany Parish District Attorney violated his constitutional rights by maintaining a policy or practice of failing to ensure that *Brady* evidence was disclosed to defendants. 187 F.3d at 469. The *Burge* court analyzed "Louisiana constitutional and statutory law and tort cases" to determine whether district attorneys were policymakers for the local government or for the state government in this particular area. *Id.* at 470.

The Fifth Circuit looked to provisions of the Louisiana Constitution, which provide "that a district attorney has charge of every criminal prosecution by the State in his district, and is the representative of the State before, and legal advisor to, the grand jury," along with Louisiana statutes outlining the district attorney's powers and duties. *Id.* at 469 (citing LA. CONST. art. V, § 26(B) and La. Rev. Stat. §§ 16:1–912; 11:1581–1587). The *Burge* court also discussed Louisiana case law, from which it inferred that "the entity liable for the torts of a district attorney's employees under state law is the office of the district attorney as an independent local government entity." *Id.* at 469–70 (citing *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669, 671 (La. 1981); *accord Riley v. Evangeline Parish Sheriff's Office*, 637 So.2d 395 (La. 1994)). The court concluded, in plain and unambiguous terms, that "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities" and, as such, is

---

[2] When citing to pages within the District Attorney's motion, Dkt. 107-1, Plaintiffs refer to the page numbers as they appear at the top of the page when viewing the document on the Court's Electronic Case Filing system.

liable "for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material." *Id.* at 470.

In light of *Burge*'s explicit holding and language about Louisiana district attorneys serving a local government function, courts have repeatedly rejected the exact same argument the District Attorney makes here: that the *Burge* opinion "never squarely answers" the question of whether a Louisiana district attorney acts on behalf of the State of Louisiana or the OPDA when creating policies regarding disclosure of exculpatory evidence. These courts have unanimously determined that the *Burge* opinion squarely and unequivocally answers that question. *See, e.g., Floyd*, No. 19-cv-8769, Doc. No. 219, at 7 ("*Burge* forecloses Defendant's argument here."); *Williams*, 2023 WL 6160990 at *2 ("In *Burge*, the Fifth Circuit directly addressed whether Louisiana District Attorney's offices act as state or local entities."); *Jones*, 2023 WL 3211865, at *3 ("*Burge* necessitates the conclusion that a district attorney in Louisiana acts on behalf of the district attorney's office when making decisions regarding the disclosure of exculpatory evidence—not the state."). *Burge* similarly forecloses the District Attorney's identical argument here.

**II.     The Fifth Circuit's holding in *Burge* remains binding.**

Hoping to sidestep the Fifth Circuit's analysis in *Burge*, the District Attorney urges this Court to look to two more recent decisions applying Texas law. *See Daves v. Dallas County*, 22 F.4th 522 (5th Cir. 2022) (*en banc*); *Arnone v. County of Dallas*, 29 F.4th 262 (5th Cir. 2022). But whether the District Attorney was wearing a "local" or "state" hat with respect to the challenged policies in this case must be determined by looking to *Louisiana* law. Decisions under Texas law are irrelevant. *See Smith*, 2023 WL 2263841, at * ("[T]his analysis must be undertaken under Louisiana law. Therefore, *Daves* and *Arnone* are not determinative because both of those cases involved interpretation of Texas law.").

7

The District Attorney's argument that *Daves* and *Arnone* silently "abrogated" all pre-2022 jurisprudence suggesting that Louisiana district attorneys act as local policymakers when gathering and disclosing evidence while prosecuting state law crimes, Dkt. 107-1 at 16, is not tenable. In the Fifth Circuit, it is black-letter law that only "intervening precedent by [the Fifth Circuit] sitting *en banc* or a Supreme Court precedent" can overturn a prior panel's decision. *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993). And even an *en banc* decision "cannot overturn a binding published panel decision unless it does so clearly." *United States v. Vega*, 960 F.3d 669, 675 (5th Cir. 2020).[3] Neither *Daves* nor *Arnone* cites—let alone criticizes—*Burge*. Moreover, after *Daves* was decided, the Fifth Circuit has continued to cite *Burge* favorably for the proposition that, "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office" in Louisiana "resembles other local government entities." *Kimble v. Jefferson Par. Sheriff's Office*, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (*per curiam*); *see also Jones*, 2023 WL 3211865, n. 31 (citing *Kimble* as support for the proposition that *Burge* remains binding after *Daves*). Were it "clear" that the *en banc* Fifth Circuit silently overruled *Burge* in *Daves*, one would not expect to see members of that Court continuing to rely on it.[4] Put simply, *Burge* continues to

---

[3] Ignoring both *F.D.I.C.* and *Vega*, Defendant argues that district courts "can and often do" reject binding Fifth Circuit precedent when it is "sufficiently clear" that the precedent has been "implicitly overruled[.]" Dkt. 107-1 at 31. Notably, however, the District Attorney fails to identify a single instance in which a district court has concluded that new *Fifth Circuit* case law implicitly overruled one of the Fifth Circuit's own decisions. Instead, he relies on a string of cases where subsequent holdings by the *Supreme Court* made clear that earlier Fifth Circuit precedent no longer controlled. *Id.* at 31 n. 20. Obviously, holdings by the Supreme Court may override lower court precedent. But, per *Vega*, the Fifth Circuit cannot overturn its *own* precedent unless it does so clearly, meaning the court either explicitly says a case is overruled, or its interpretation in a later *en banc* case is entirely "irreconcilable" with prior holdings. 960 F.3d at 675. Plaintiffs were unable to find—and Defendant does not cite—a case where the Fifth Circuit found two of its own decisions to be irreconcilable; *Burge* and *Daves* certainly are not. Both cases conduct the same analysis articulated in the same Supreme Court decision.

[4] Bizarrely, the District Attorney argues that by citing *Burge*, the *Kimble* court actually "provide[d] further reason to doubt [*Burge*'s] validity." Dkt. 107-1 at 24. He suggests that because *Kimble* concluded that the district attorney defendant was acting "as an arm of Jefferson Parish, the government entity she represented," *Kimble*, 2023 WL 1793876, at *3, the decision is inconsistent with *Burge*, which held that

8

be binding, and this Court must follow it.

In any event, *Daves* and *Arnone* do not undermine *Burge*; they simply address different functions in a different state law context. *See McMillian*, 520 U.S. at 794 (recognizing that "there is no inconsistency created by court decisions" that declare a government official to be acting in a local capacity in one state and not in another because the applicable law may "vary from State to State"). And nothing in their analysis of Texas law calls into question *Burge*'s analysis of Louisiana law years prior.[5]

In *Daves*, the Fifth Circuit considered whether Dallas County judges were acting for the county or for the State of Texas when establishing a bail schedule for their courts. The Fifth Circuit stressed that its task was to look at state law as applied to the specific function at issue. *Daves,* 22 F.4th at 532. The court noted that bail is a right granted by the Texas constitution and that the process for determining bail is controlled by Texas state law. It thus concluded that "the state constitution and statutes compel a finding that defendant County Judges act for the state at times," and the "creation of a bail schedule is one of those times." *Id.* at 534. In contrast to *Daves*, this case involves neither the Texas constitution or statutes, nor the bail schedule function. *Daves* is therefore inapposite.

In *Arnone*, the Fifth Circuit considered whether the Dallas County's district attorney was

---

Louisiana district attorney's offices are independent local entities. This attempt at word parsing is unpersuasive. As explained in section III(B), *infra*, the District Attorney is liable under *Monell* regardless of whether he was acting on behalf of the OPDA or New Orleans more generally. Moreover, the *Kimble* court went on to clarify that it considered whether the district attorney was a "final policymaker for the Parish *or the District Attorney's Office*," *id.*, undercutting the District Attorney's claim that the *Kimble* court misunderstood *Burge* when relying on it.

[5] To the extent the District Attorney suggests otherwise based on the Fifth Circuit's recognition in *Arnone* that its "earlier jurisprudence on whether Texas district attorneys act on behalf of the state was implicitly overruled by [*Daves*]," Dkt. 107-1 at 19 n.10, that argument is misplaced. The "earlier jurisprudence" implicitly overruled in *Daves* concerned cases the Fifth Circuit decided a decade before the Supreme Court's decision in *McMillian*. *See Arnone*, 29 F.4th at 270 ("Put simply, both *McMillian* and *Daves* were decided after *Crane*, and both decisions undermine it.").

9

performing a state or county function when implementing a polygraph testing policy related to sex offender probation revocation programs. The court emphasized features of the Texas Constitution, Texas case law, and the Texas Code of Criminal Procedure to conclude that district attorneys act for the state when they decide to seek revocation of probation or deferred adjudication. *Arnone,* 29 F.4th at 269–70. Accordingly, the *Arnone* decision is similarly inapposite.

At bottom, the District Attorney's argument that this Court should ignore *Burge* boils down to an argument that *Daves* and *Arnone* "did a better job at applying *McMillian* than the *Burge* court." *Floyd*, No. 19-cv-8769, Doc. No. 219, at 7. But that argument fails for several reasons. First, the District Attorney's criticisms are insubstantial. He asserts, for example, that *Burge* gave too much weight to factors that the *Daves* court considered unimportant, such as those used by courts to assess an official's Eleventh Amendment immunity. But the District Attorney ignores that the Eleventh Amendment analysis in *Burge* was conducted in *addition* to—not in place of—its analysis under *McMillian* regarding whether the District Attorney was a "person" for purposes of Section 1983. Regardless, it is not the province of a district court to overrule or ignore binding precedent because it believes the reasoning behind that precedent is unpersuasive. In other words, even if one assumes that *Daves* and *Arnone* did a "better" job applying *McMillian* than *Burge*— and to be clear, they did not—this Court "is not any less bound by the holding of *Burge*." *Floyd*, No. 19-cv-8769, Doc. No. 219, at 7.

**III.   Under *McMillian*, the OPDA acts as a local government entity when creating internal policies related to the disclosure of evidence.**

Because *Burge* is directly on point and has not been overruled or even called into question, the Court need not conduct a *McMillian* inquiry from scratch. It can instead simply deny the OPDA's motion based on currently binding precedent. *See Williams*, 2023 WL 6160990, at *3 ("There is no need to conduct a comprehensive comparison of the similarities and differences

10

between district attorneys in Texas and Louisiana because a separate analysis of each has previously been conducted in *Arnone* and *Burge*").

Even if this Court were writing on a blank slate, however, the result would be the same. Again, under *McMillian*, a court must determine "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." 520 U.S. at 785. To do so, they look to state law, including the constitution, statutes, and case precedent. Applying this framework here, it is clear that the OPDA acts as an arm of the local government when setting policies regarding the disclosure of *Brady* material.

### A. The Louisiana Constitution treats district attorneys as local policymakers.

The District Attorney argues that the Louisiana Constitution "vests [district attorneys] with power to act on behalf of the State of Louisiana." Dkt. 107-1 at 11. In fact, the Louisiana Constitution includes an exhaustive list of state officials in whom the powers of each of the three branches are vested, and district attorneys are not among them. *See,* LA. CONST. art. V § 1 (vesting state judicial power in "a supreme court, courts of appeal, district courts, and other courts authorized by this Article"). Instead, they are twice described as "*parish* official[s]," LA. CONST. art. VI §§ 5, 7 (emphasis added). The constitution further provides that only the parish—not the State—has the power to remove a district attorney. *See* LA CONST. art. V § 26. Rather than addressing these provisions, Defendant places significant weight on the portions of the constitution that describe the role of district attorneys. *See* Dkt. 107-1 at 13–14. But the Louisiana Legislature has made clear that "[w]hile all offices created by the constitution . . . are 'public offices', they are not all '***state*** offices,' as they include parish offices, municipal offices, district offices, and offices of political subdivisions." La. Rev. Stat. § 42:1441.3 (emphasis added). Thus, the fact that the constitution "establishes the powers of district attorneys," Dkt. 107-1 at 12, bears little, if at all, on

11

whether district attorneys are officers of the State.

The State is similarly unable to use budget contributions to control district attorneys, as the Constitution bars it from reducing its contributions to the salaries of district attorneys and their staff during the attorneys' six-year terms of office. LA. CONST. art. V § 31. Conversely, Orleans Parish may alter the OPDA's funding annually. Indeed, the New Orleans City Council has historically used this power to affect OPDA policy. *See* Fin. Statements and Independent Auditors Report–District Attorney of the Orleans Judicial District 2021, https://tinyurl.com/yfvbzpfd ("The City of New Orleans provides appropriations to the District Attorney for operations which must be approved and adopted by the City of New Orleans . . . . All appropriations lapse at year-end."); N. Chrastil, *Proposed 2023 Budget Close to Providing Funding Parity Between New Orleans DA, Public Defenders Following 2020 Ordinance*, The Lens, Nov. 28, 2022, https://tinyurl.com/3r3tchbs.[6]

### B. State law treats district attorneys as local policymakers.

In addition to the Constitution, Louisiana statutes and case law support a finding that district attorneys act as policymakers for local entities rather than the state. The Louisiana Supreme Court's holding in *Diaz v. Allstate Ins. Co.*, 433 So. 2d 699, 701 (La. 1983)—which the District Attorney cites three times for the proposition that "[a] district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office"—does not suggest otherwise. In *Diaz*, the court held that "a district attorney's employee is an employee of the state" for the purposes of the state's indemnification

---

[6] The District Attorney argues that "unlike in Texas, the Louisiana Constitution includes a procedure by which the Louisiana Attorney General may 'supersede' a district attorney who is representing the State in a civil or criminal action." Dkt. 107-1 at 13 (citing La. Const. Art. IV § 8). But that exception proves the point: if Louisiana district attorneys were state officials, what need would the state's Attorney General have to intervene? *See Burge*, 187 F.3d at 469 (holding the same and describing the Attorney General provision as "a narrow, rarely invoked exception").

12

statute, La. Rev. Stat. § 13:5108.2.[7] *Id.* The District Attorney neglects to mention, however, that shortly after *Diaz*, the Louisiana legislature amended La. Rev. Stat. § 13:5108.2 to expressly *exclude* district attorneys and their employees from the definition of a "covered official," including them instead in a list of local officers who are not indemnified by the State in civil rights suits. *See Hudson v. City of New Orleans*, 174 F.3d 677, 686 (5th Cir. 1999) (noting that the legislature's 1984 amendments to La. Rev. Stat. Ann. § 13:5108.2 legislatively "overruled the Louisiana Supreme Court's decision in *Diaz*"). In other words, in the wake of the *Diaz* holding, the State (through its legislature) took action to make clear that district attorneys were *not* state officials.

The legislature also adopted post-*Diaz* measures to clarify that Louisiana cannot be held vicariously liable for the acts of "parish officials," such as district attorneys. *See* La. Rev. Stat. §§ 42:1441, 42:1442 (establishing that the state is not vicariously liable for "parish officials" and naming district attorneys in the list of parish officials). These amendments to Louisiana's indemnity and limitation of liability statutes are strong evidence of legislative intent "to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices." *Smith*, 2023 WL 2263841, at *9 (citing cases); *see also Gibson v. State*, 644 So.2d 1148, 1150 (La. App. 4th Cir. 1994) (as a matter of Louisiana law, "the District Attorney's Office is not the State"); La. Atty. Gen Op. No. 90-104 (May 25, 1990) (concluding that district attorneys are employees of the parish which they serve).[8]

---

[7] This statute was redesignated as § 13:5108.1 in 2015. *See* La. Rev. Stat. § 40:1299.91 ("Redesignated to R.S. 13:5108.2").

[8] Defendant cites four post-*Diaz* cases that he claims support his argument that courts continue to consider district attorneys to be state officials. *See* Dkt. 107-1 at 12–13. But while these cases generally reference the district attorney's role within Louisiana's judicial system, they have nothing to do with whether the district attorney acts as a state or municipal actor. *See, La. State Bd. of Nursing v. Gautreaux*, 39 So. 3d 806, 814 (La. App. 1st Cir. 2010) (considering whether nursing board subpoenas interfered with the district attorney's prosecutorial duties); *State v. Fifteen Thousand, Four Hundred Thirty-One Dollars*, 779 So. 2d 1043, 1047 (La. App. 3rd Cir. 2001) (considering whether district attorney could exercise

The District Attorney himself admits that this legislation "would suggest that a Louisiana district attorney is a *parish* official." Dkt. 107-1 at 29. Apparently hoping to somehow twist this in his favor as an alternative ground for dismissal, he suggests that "Orleans Parish is the proper defendant, and the claims against the District Attorney's Office must be dismissed." *Id.* at 30. But when determining Monell liability, the question is whether the official was acting as a policymaker for the state, or as a policymaker for any municipal entity. Because both parish officials and district attorney's offices are *municipal* actors, the language the District Attorney highlights is a distinction without a difference. Plaintiffs have sued the District Attorney in his official capacity—whether he was acting on behalf of the OPDA or the Parish of New Orleans does not matter. He is subject to *Monell* liability either way.[9]

### C. Establishing procedures for the collection and disclosure of *Brady* evidence is a local policy.

Even if Orleans Parish district attorneys could, at times, act as an arm of the state, courts must also ask whether an individual is a local policymaker "in a *particular area*, or on a *particular*

---

authority over the Department of Revenue and Taxation); *Hatfield v. Bush*, 572 So. 2d 588, 592 (La. App. 1st Cir. 1990) (concluding that because district attorneys are public officials, their employees' "leave requests forms are public records"); *Bd. of Comm'rs of Orleans Levee Dist. v. Connick*, 654 So. 2d 1073, 1077 (La. 1995) (holding that court overseeing civil case did not have authority to stay district attorney's related criminal investigation). Plaintiffs do not dispute that district attorneys play an integral role in the Louisiana court system. But, as the state legislature has made clear by explicitly refusing to take legal responsibility for district attorneys' actions, they do so as independent parish entities.

[9] Defendant also cites cases where *Texas* courts have classified district attorneys as local officials. He essentially suggests that if the *Arnone* court was not persuaded by such cases, this Court shouldn't be either. *See* Dkt. 107-1 at 29 n.19. First, it is noteworthy that the plaintiffs in *Arnone* did not raise this argument. Perhaps if they had, the "dual-hat" scale would have tipped in their favor. Second, the Texas cases cited by Defendant do not involve the state of Texas actively distancing itself from the actions of district attorneys, as the state of Louisiana did here. In fact, in each of the cases cited, the court noted that Texas law treats district attorneys the same as other state officials for the purpose of sovereign immunity. *See, e.g., Robbins v. Lostracco*, 578 S.W.3d 130, 134–35 (Tex. App. 2019) (noting that county officials, like state officials, are afforded sovereign immunity against tort claims); *Sweed v. City of El Paso Police Dept.*, 346 S.W.3d 679, 680 (Tex. App. 2009) (same); *Gonzalez v. Lichtenberger*, 2017 WL 2562768, at *1, 4 (Tex. App. June 14, 2017) (same).

14

*issue.*" *McMillian*, 520 U.S. at 785 (emphasis added). Both *Daves* and *Arnone* dealt with the exercise of powers specifically granted by the state—a bail right granted by the state constitution and controlled by state law, and the power to seek revocation of probation or deferred adjudication, respectively. *See Arnone*, 29 F.4th at 269 ("The district attorney's promulgating or acquiescing to a policy governing future uses of the power to seek revocation of probation or deferred adjudication is inextricably linked with his power to seek it in individual cases," a power created by the state). In contrast, the District Attorney's administrative obligation to create policies with respect to *Brady* compliance is mandated by the federal Constitution.

The District Attorney argues that the Louisiana Code of Criminal Procedure also imposes disclosure obligations on the OPDA that go above and beyond *Brady*. He suggests that this proves that district attorney policies on disclosure of evidence are "inextricably linked" to the use of state power. *See* Dkt. 107-1 at 21–22. Upon closer inspection, however, one finds that the statutes relied on by the District Attorney actually impose obligations on *courts*, rather than the OPDA itself. *See* La. Code Crim. Pro. art. 716(D) ("Upon written motion of the defendant, ***the court shall*** order the district attorney to disclose to the defendant . . ."); *id.* art. 717(A) ("Upon written motion of the defendant, ***the court shall*** order the district attorney to disclose . . ."); *id.* art. 718 ("[U]pon written motion of the defendant, ***the court shall*** order the district attorney to permit or authorize . . ."); *id.* at art. 719 ("Upon written motion of the defendant, ***the court shall*** order the district attorney to permit or authorize . . ."); *id.* art. 729.5 ("If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, ***the court may order*** such party . . .") (emphasis added to each).[10] Rather than supporting the District Attorney's argument, then, these statutes reinforce

---

[10] The only statute purporting to impose a duty directly on the district attorney merely reiterates that the district attorneys' offices are bound by *Brady*. *See* La. Code Crim. Pro. art. 723(B)

15

*Plaintiffs'* position—and the holding in *Burge*—that while the Louisiana Constitution vests *courts* with state judicial power, both the constitution and the state's statutes treat district attorneys as independent local actors.

## CONCLUSION

For the foregoing reasons, the Court should deny the District Attorney's motion to dismiss.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady*
Jed W. Glickstein*
David Schmutzer*
Nabihah Maqbool*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184
sarah@kaplangrady.com

John N. Adcock (Bar No. 30372)
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
(504) 233-3125
jnadcock@gmail.com

* Admitted pro hac vice

*Attorneys for Plaintiffs*
*Kunta Gable and Sidney Hill*

---

("Notwithstanding any provision to the contrary contained herein, the state shall provide the defendant with any evidence constitutionally required to be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny."). The Louisiana Supreme Court's rules of professional conduct, which the District Attorney also relies on, do the same.