UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BERNELL JULUKE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3111** |
| | **C/W NO. 23-6203** |
| **LEN DAVIS, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this civil-rights case is the opposed Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendant Orleans Parish District Attorney Jason R. Williams to dismiss the official-capacity municipal-liability and civil-rights-conspiracy claims that Plaintiff Bernell Juluke asserts against him under 42 U.S.C. § 1983. For the reasons that follow, the motion to dismiss is **DENIED** without prejudice to Williams's right to re-urge a motion to dismiss in response to a second amended complaint that tries to fix the pleading problems outlined here.

### I. BACKGROUND

Juluke alleges that he was wrongfully convicted of second-degree murder and imprisoned for over 28 years because officers of the New Orleans Police Department ("NOPD") framed him, and because prosecutors at the Office of the Orleans Parish District Attorney ("OPDA") violated their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing material evidence favorable to him.[2]

---

[1] ECF No. 66.
[2] *See generally* ECF No. 54 (Juluke's operative amended complaint).

After his release, Juluke sued Williams, in his official capacity as the Orleans Parish District Attorney; the City of New Orleans; former NOPD officers allegedly involved in his "intentional[ ] fram[ing]"; and the administrators of the successions of other NOPD officers allegedly involved in his "intentional[ ] fram[ing]."[3] But only two official-capacity Section 1983 claims against Williams are relevant here and now.[4]

The first of those official-capacity Section 1983 claims is a municipal-liability claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).[5] For that *Monell* claim, Juluke generally alleges that OPDA had "a policy, pattern, practice, and/or custom of withholding and/or suppressing material exculpatory evidence"; that the "pattern was well known to the OPDA due to numerous instances of such misconduct by Orleans Parish ADAs" before Juluke's prosecution; and that OPDA prosecutors withheld "material exculpatory evidence against" Juluke as "the result of OPDA's policy, pattern, practice, and/or custom."[6]

The second Section 1983 claim is a civil-rights-conspiracy claim.[7] For it, Juluke generally alleges that "Defendants combined . . . to arrest, prosecute, and convict" him despite knowing he was innocent; that "Defendants specifically conspired to fabricate evidence to convict" him "and to withhold and suppress evidence

---

[3] *See id.* at 2.
[4] *Id.* at ¶¶ 186–195 (count 8); *id.* at ¶¶ 196–200 (count 9).
[5] *Id.* at ¶¶186–195. It is unclear whether Juluke intends to plead an independent failure-to-train claim under *Monell*. *See id.* at ¶¶ 189–191 (referencing "failure to train" but including few details). If he intends to do so, any second amended complaint he files must make that clear.
[6] *Id.*
[7] *Id.* at ¶¶ 196–200.

demonstrating his innocence"; and that his "constitutional rights were violated as a direct and proximate result of such agreement and actions in furtherance thereof[.]"[8]

Now, Williams moves the Court to dismiss those two official-capacity Section 1983 claims for failure to state a claim under Rule 12(b)(6).[9] Juluke opposes.[10]

## II.  LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[8] *Id.*
[9] ECF No. 66.
[10] ECF No. 85.

3

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III. ANALYSIS

Williams contends that Juluke fails to state Section 1983 claims against him for (A) municipal liability and (B) conspiracy. The Court considers each claim in turn.

### A. Municipal Liability

Section 1983 permits Juluke to sue "[e]very person" who violates his federal rights "under color of" state law. 42 U.S.C. § 1983. "States and their officials are not 'persons' under Section 1983." *Daves v. Dall. Cnty.*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc) (citing W*ill v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). But municipalities and "other local government units"—including district attorney's offices like the OPDA—are "persons" suable under Section 1983. *Monell*, 436 U.S. at 690 & n.54; *see also Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999) ("[T]he district attorney's office resembles other local government entities[.]"). Juluke may sue under Section 1983 "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have cause the particular constitutional or statutory violation at issue." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). For purposes of Williams's

4

Rule 12(b)(6) motion to dismiss, the "local governmental actor" is the OPDA, and the "action alleged to have caused the particular constitutional . . . violation" is the OPDA's alleged "policy, pattern, practice, and/or custom of withholding and/or suppressing material exculpatory evidence from citizens like . . . Juluke."[11] *See id.*

Juluke's "official-capacity suit against a local officer, like [Williams], is a suit against the local government itself"—here, the OPDA. *Pipkins v. Stewart*, 105 F.4th 358, 360 (5th Cir. 2024) (per curiam) (citing *Monell*, 436 U.S. at 658). Holding the OPDA liable under Section 1983 here "require[s] three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.'" *Arnone v. Dall. Cnty.*, 29 F.4th 262, 265–66 (5th Cir. 2022) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc)).

### 1. "Responsibility for" the Alleged *Brady* Violations

Invoking those elements, Williams contends that Juluke fails to plausibly plead them. His first argument is that Juluke fails to state a Section 1983 municipal-liability claim against him because Juluke alleges that the City of New Orleans—not the OPDA—is the entity "responsible for" the *Brady* policies that Juluke challenges.[12] The Court is not persuaded. It is true that Juluke alleges in one paragraph of his complaint that the City of New Orleans was "responsible for" the OPDA "policies, practices, patterns, and customs" that Juluke challenges as unconstitutional.[13] But Juluke elsewhere alleges that OPDA "maintained"[14] the challenged *Brady* policies,

---

[11] ECF No. 54 at ¶ 187.
[12] ECF No. 66-1 at 4–5.
[13] ECF No. 54 at ¶ 16.
[14] *Id.* at ¶ 121.

5

and that OPDA "implemented, enforced, encouraged, and sanctioned" them.[15] Taking those allegations as true and viewing them in Juluke's favor, the Court can plausibly infer that OPDA is "responsible for" the challenged *Brady* policies. And Juluke may plead "allegedly inconsistent factual allegations" about the identity of the entity responsible for the challenged *Brady* policies "without rendering [his complaint] susceptible to dismissal" under Rule 12(b)(6). *Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2015); *see also* FED. R. CIV. P. 8(d) (permitting the pleading of alternative statements of a claim as well as inconsistent claims). So the Court declines to dismiss Juluke's Section 1983 municipal-liability claim against Williams on this ground.

### 2. "Policymaker"

Next, Williams contends that Juluke fails to state a *Monell* claim because he inadequately alleges the "involvement" of an OPDA "policymaker."[16] The Court agrees. True, the "specific identity" of the OPDA "policymaker is a legal question that need not be pled[.]" *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016). But Juluke still must "allege facts that show an official policy, promulgated or ratified by the policymaker, under which the [OPDA] is said to be liable." *Id.* Juluke has not done so. His complaint lacks well-pleaded factual allegations from which the Court can plausibly infer that an OPDA policymaker "promulgated" the challenged *Brady* policies. *Id.* Although Juluke argues in his opposition brief that he "has alleged that former District Attorney Harry F. Connick, Sr., Orleans Parish District Attorney at

---

[15] *Id.* at ¶ 187.
[16] ECF No. 66-1 at 5–6 (internal quotation marks omitted).

6

the time of Plaintiff's wrongful conviction, is a relevant policymaker,"[17] Juluke has not actually done so. In fact, Juluke does not allege that Connick was the Orleans Parish District Attorney when Juluke was convicted, or that Connick (or anyone else) promulgated, condoned, approved, or is otherwise responsible for, the *Brady* policies or practices Juluke challenges. Thus, because Juluke fails to plead facts plausibly establishing the "policymaker" element, Juluke fails to state a plausible *Monell* claim.

### 3. "Policy"

Williams next contends that Juluke fails to state a municipal-liability claim because he inadequately alleges the "policy" element of that claim.[18] "Official municipal policies can take various forms." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (per curiam). "They often appear as written policies, but an official policy may also be an unwritten but 'widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Alvarez*, 904 F.3d at 390). Juluke does not allege that an official written policy instructed OPDA prosecutors to withhold exculpatory evidence.[19] So Juluke must "rely on a custom or practice so common and well settled as to constitute a custom that fairly represents municipal policy[.]" *Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (quotation and citations omitted). To plausibly plead a custom, pattern, or practice that fairly represents OPDA policy, Juluke "must do more than describe the incident that gave rise to his injury." *Johnson v. Harris Cnty.*, 83 F.4th 491, 946 (5th

---

[17] ECF No. 85 at 9.
[18] ECF No. 66-1 at 6–8.
[19] *See generally* ECF No. 54.

Cir. 2023) (quotation and citation omitted). His "description of the challenged" *Brady* practices "cannot be conclusory; it must contain specific facts." *Id.* (quotation and citation omitted). "And those specific facts must be similar to the case at hand[.]" *Id.*

*Armstrong* illustrates the factual specificity required to plausibly plead a custom, pattern, or practice of *Brady* violations that fairly represents municipal policy for *Monell* purposes. 60 F.4th at 276–78. There, an exoneree sued a city and a parish district attorney (among others) under *Monell* on the theory that the city and the parish district attorney had policies of failing to disclose exculpatory evidence. *id.* at 276–77. The exoneree alleged that the city "had an official policy of . . . failing to disclose police reports containing exculpatory evidence" and "a systematic pattern of withholding exculpatory information." *Id.* at 276 (quotation omitted). As for the parish district attorney, the exoneree specifically alleged "a custom, pattern and practice of promoting, facilitating, or condoning improper, illegal, and suppression of exculpatory and impeachment evidence[.]" *Id.* at 277 (quotation omitted). The exoneree also listed "nine cases over a 24-year period as examples where exculpatory evidence was suppressed by the [d]istrict [a]ttorney's practices." *Id.* at 277–78.

A Fifth Circuit panel affirmed the Rule 12(b)(6) dismissal of the exoneree's *Monell* claims against both the city and the parish district attorney. *Id.* at 276–78. In so doing, the panel held that the exoneree's allegations failed to plausibly establish a custom, pattern, or practice that fairly represents municipal policy. *Id.* The panel characterized the exoneree's custom, pattern, or practice allegations against the city as "conclusory" and lacking "meaningful factual content." *Id.* at 276. And the panel

8

deemed deficient the custom, pattern, or practice allegations against the district attorney for "similar" reasons. *Id.* at 277. Per the panel, the exoneree's "allegations of a formal policy and direct policymaker involvement [were] again entirely conclusory." *Id.* It did not matter that the exoneree had specifically alleged "nine cases over a 24-year period" as purported examples, because "nine constitutional violations over a 24-year period and thousands of prosecutions are hardly sufficient to show a municipal custom." *Id.* at 278 (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Applying *Armstrong*, the Court agrees with Williams that Juluke fails to plead facts plausibly establishing a custom, pattern, or practice of *Brady* violations that is sufficiently common and well settled as to fairly represent OPDA policy. At base, Juluke's allegations of custom, pattern, and practice lack the factual specificity Fifth Circuit precedent requires: Juluke alleges that "OPDA had a pattern and practice of withholding material exculpatory evidence to obtain convictions as they did here";[20] that "OPDA had a pattern or practice of withholding exculpatory witness statements and exculpatory reports at the relevant time";[21] and that OPDA "implemented, enforced, encouraged, and sanctioned a policy, pattern, practice, and/or custom of withholding and/or suppressing material exculpatory evidence from citizens like Bernell Juluke."[22] These conclusory allegations are materially indistinguishable from the allegations the Fifth Circuit found wanting in *Armstrong*. 60 F.4th at 276–78.

---

[20] ECF No. 54 at ¶ 9.
[21] *Id.* at ¶ 118.
[22] *Id.* at ¶ 187.

9

To be sure, one paragraph of Juluke's complaint cites thirteen "published decisions" over a 36-year span that Juluke says "expos[e] the OPDA's failure to turn over exculpatory witness statements[.]"[23] But Juluke does not allege specific facts from which the Court can plausibly infer that the alleged *Brady* violations in the cited cases are similar enough to the alleged *Brady* violations in this case. *See Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents."); *see also, e.g., Connick*, 563 U.S. at 62 (concluding that an alleged pattern of generic "*Brady* violations" was not similar enough to "the sort of *Brady* violation at issue"). In all events, 13 constitutional violations over a 36-year span and "thousands of prosecutions are hardly sufficient to show a municipal custom" at the time Juluke was tried and convicted in 1996. *Armstrong*, 60 F.4th at 278 (citing *Connick*, 563 U.S. at 62).

For his part, Juluke tries—but fails—to avoid *Armstrong*. He reasons that *Armstrong* should not control because none of the cases the exoneree listed in his complaint there involved an actual *Brady* violation; here, by contrast, the cases Juluke cites in his complaint involve actual *Brady* violations.[24] It is true that none of the nine cases listed in the *Armstrong* exoneree's complaint found a *Brady* violation. *See* 60 F.4th at 278. But that alone does not mean Juluke's allegations suffice under *Armstrong*. Independent of the exoneree's "mischaracterization" of the cases listed in his complaint, *Armstrong* found the exoneree's allegations inadequate because they were "formulaic," and because "nine constitutional violations over a 24-

---

[23] ECF No. 54 at ¶ 120.
[24] ECF No. 85 at 12.

10

year period and thousands of prosecutions" are insufficient "to show a municipal custom." *Id.* Those same general problems plague Juluke's pleading here.[25]

Citing several opinions from other sections of this Court, Juluke counters that "OPDA's history of repeated *Brady* violations during the relevant time period are well documented in this district."[26] Perhaps so. The problem, however, is that Juluke does not reference any of those cases in his complaint, or allege in that complaint any facts analogizing the alleged *Brady* violations in his case to the *Brady* violations allegedly documented in those cases. "[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases); *accord, e.g.*, *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-CV-1011, 2015 WL 5665060, at *1 n.1 (E.D. La. Sept. 24, 2015) (Vance, J.) (rejecting plaintiff's "attempts to present a number of new factual allegations in her opposition to defendants' motion to dismiss"). The Court may not consider the *Brady* violations documented in those unpleaded cases in evaluating whether Juluke has pleaded a plausible claim here.[27]

---

[25] Juluke says that the allegations of his complaint "comport" with a handful of unpublished district-court decisions that evaluate Rule 12(b)(6) motions to dismiss *Monell* claims that arose outside the *Brady*-violation context. *See* ECF No. 85 at 12 (collecting cases). But the Court is bound to faithfully apply *Armstrong*—a binding Fifth Circuit precedent that squarely addresses the issue raised here: the factual detail a *Monell* plaintiff must plead to plausibly establish a custom, pattern, or practice of *Brady* violations that suffices to overcome a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) (noting that "legally indistinguishable" Fifth Circuit precedent "must be followed by other panels of [the Fifth Circuit] and district courts unless overruled *en banc* or by the United States Supreme Court" (citations omitted)).

[26] *Id.* at 13–14.

[27] Relatedly, Juluke's opposition includes a helpful discussion of some of the facts of three of the cases Juluke cites in paragraph 120 of his complaint. *See* ECF No. 85 at 15–16. Again, however, Juluke's complaint does not include those factual details; his complaint merely lists the cases without meaningfully linking any of the facts underlying the *Brady* violations found in them to the facts underlying the custom, pattern, or practice of *Brady* violations Juluke aims to plead here.

11

In sum, Juluke inadequately pleads the "policy" element of his *Monell* claim. To be clear, Juluke's opposition brief includes considerable factual detail that is missing from the complaint and that could materially alter the Court's analysis were it properly included in the complaint. But it is the allegations in the complaint—not facts asserted in a motion-to-dismiss opposition—the Court must evaluate. And Juluke's complaint lacks well-pleaded factual allegations allowing the Court to plausibly infer that OPDA had a custom, pattern, or practice of *Brady* violations that was sufficiently common and well settled as to fairly represent OPDA policy, and sufficiently similar to the *Brady* violations that Juluke alleges led to his conviction.

### 4. Deliberate Indifference

Williams next contends that Juluke inadequately alleges that OPDA acted with deliberate indifference in relation to its *Brady* policies.[28] "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quotation and citation omitted). "Usually, a plaintiff must show a pattern of similar violations to establish deliberate indifference." *Sligh v. City of Conroe*, 87 F.4th 290, 302 (5th Cir. 2023) (quotation and citation omitted). For essentially the same reasons that Juluke fails to plausibly plead a custom, pattern, or practice of sufficiently similar *Brady* violations by OPDA for purposes of *Monell*'s "policy" requirement, Juluke fails to plausibly plead a "pattern of similar [*Brady*] violations" by OPDA for purposes of the deliberate-indifference requirement. *Id.* (quotation and citation omitted).

---

[28] ECF No. 66-1 at 8–9.

### 5. "Moving Force"

Williams next contends that Juluke inadequately alleges that OPDA's *Brady* policies were the "moving force" behind his conviction.[29] To meet the "moving force" element, Juluke must plead facts plausibly establishing "a direct causal link" between OPDA's *Brady* policies and his "constitutional injury." *Valle v. City of Hous.*, 613 F.3d 536, 546 (5th Cir. 2010) (quotation and citation omitted). Because Juluke fails to plausibly plead a "policy" on the part of the OPDA, Juluke necessarily fails to plead facts sufficient to show that any such "policy" was the "moving force" behind his alleged "constitutional injury." *Id.* (quotation and citation omitted).

### B. Civil-Rights Conspiracy

Finally, Williams contends that Juluke fails to state a Section 1983 civil-rights-conspiracy claim.[30] To state a Section 1983 civil-rights-conspiracy claim, Juluke must plead facts plausibly establishing "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Armstrong*, 60 F.4th at 280 (quotation and citation omitted). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery v. Wilson*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1023–24 (5th Cir. 1982)).

---

[29] *Id.* at 10.
[30] ECF No. 66-1 at 11.

Juluke fails to plead a plausible civil-rights-conspiracy claim. That is because his conspiracy allegations are conclusory; they feature no "specific factual allegations," *id.*, and they do not even distinguish among the various "Defendants."[31]

\* \* \*

The Court has held that Juluke fails to state *Monell* and civil-rights-conspiracy claims against Williams. But Juluke asks for leave to amend,[32] and the Court "should freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Because Williams has not convinced the Court that amendment would be futile,[33] and because much of the factual detail included in Juluke's briefing—but absent from his complaint—could materially alter the Court's analysis if it were properly included in a complaint, the Court finds that "justice . . . requires" Juluke to be given an opportunity to amend his complaint to try to fix the pleading problems outlined in this order and reasons. *Id.* So the Court denies Williams's motion to dismiss Juluke's claims and grants Juluke leave to file a second amended complaint within 21 days.

---

[31] ECF No. 54 at ¶¶ 196–200.
[32] ECF No. 85 at 13.
[33] Williams's only argument on futility fails. He reasons that another amendment would be futile because Juluke has alleged that the City of New Orleans—not OPDA—"is responsible for" the *Brady* policies Juluke challenges. ECF No. 99 at 6. The Court rejected that "responsibility" argument in Section III(A)(1) of this order and reasons, so it is not a basis for finding an amendment futile.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Williams's Rule 12(b)(6) motion[34] to dismiss is **DENIED** without prejudice to Williams's right to re-urge a motion to dismiss in response to any second amended complaint Juluke may file.

**IT IS FURTHER ORDERED** that Juluke is granted leave to file a second amended complaint that attempts to cure the deficiencies outlined in this order and reasons within 21 days. If Juluke fails to timely file a second amended complaint, the Court will dismiss with prejudice all of Juluke's claims against Williams.

New Orleans, Louisiana, this 25th day of February, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[34] ECF No. 66.