**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

BERNELL JULUKE,

     *Plaintiff*,

v.

LEN DAVIS, *et al.*,

     *Defendants*.

Civil Action No. 23-3111
c/w 23-6203

Relates to: No. 23-cv-6203

Section O
Judge Brandon S. Long

Division 2
Magistrate Judge Donna Phillips Currault

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this memorandum in support of his motion seeking dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of the claims asserted against OPDA in the First Amended Complaint (the "Complaint") filed by Plaintiffs Kunta Gable and Sidney Hill (the "Plaintiffs"), Doc. No. 90.

### INTRODUCTION

In 1996, Mr. Gable and Mr. Nelson were convicted, along with Bernell Juluke, of the second-degree murder of Rondell Santinac in *State of Louisiana v. Bernell Juluke, et al.*, Case No. 372-656, Orleans Parish Criminal District Court. The Plaintiffs allege that they are innocent and that they were wrongfully convicted. They allege that they were intentionally framed by two NOPD officers who were involved in an "illegal enterprise." *See* Doc. No. 90 at ¶¶ 34, 79. They further allege that NOPD officers "intimidate[d]" and "coerce[d]" a witness to make a positive identification in a "sham, unconstitutional 'line-up.'" *See id.* at ¶¶ 4, 42. They further allege that NOPD officers "deliberately with[eld] exculpatory and impeachment evidence from [them], their

counsel, and prosecutors." *Id.* at ¶ 129. The Plaintiffs assert multiple claims against the City of New Orleans and various former NOPD officers.

The Plaintiffs also assert one claim under 42 U.S.C. § 1983 against OPDA (Count 7), which represented the State of Louisiana in the *Juluke* prosecution. *See* Doc. No. 90 at ¶¶ 170–176. The Plaintiffs allege that prosecutors violated their constitutional rights by failing to disclose material exculpatory evidence to them. *See id.* at ¶¶ 51–60. The Plaintiffs also assert Count 5, "42 U.S.C. § 1983 – Conspiracy," against "All Defendants." OPDA does not concede that exculpatory evidence was suppressed or that it was favorable to the Plaintiffs or material in their criminal case. *See, e.g.*, *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (describing elements of *Brady* claim). Indeed, courts have previously held that some of this evidence was ***not*** material. *See Juluke v. Cain*, 134 F. App'x 684, 687–88 (5th Cir. 2005) ("Nothing in the logs or report was material to Juluke's guilt or innocence.").

However, assuming solely for the purposes of this motion that the Plaintiffs have adequately alleged a *Brady* violation, their claims against OPDA still must be dismissed because they have not adequately alleged the elements necessary to hold OPDA liable. That is, the Plaintiffs' allegations concerning OPDA do not include the facts necessary to plausibly show that OPDA's policymaker acted with deliberate indifference and adopted official policies that were likely to violate the constitutional rights of criminal defendants. They also have not adequately alleged that the purported *Brady* violations in their case were caused by OPDA's official policies, or that OPDA participated in a conspiracy to deliberately violate their constitutional rights. The claims against OPDA (Counts 5 and 7) therefore must be dismissed.

OPDA previously moved to dismiss the claims by Bernell Juluke (in consolidated Case No. 23-3111) on similar grounds. *See* Doc. No. 66. On February 25, 2025, this Court held that Mr.

2

Juluke had "fail[ed] to plead facts plausibly establishing a custom, pattern, or practice of *Brady* violations that is sufficiently common and well settled as to fairly represent OPDA policy." Doc. No. 153 at 9. The Court also held that Mr. Juluke had "fail[ed] to plausibly plead a 'pattern of similar [*Brady*] violations'" that could show deliberate indifference by OPDA's policymaker. *Id.* at 12. The Court further held that, because Mr. Juluke had not adequately alleged a policy, he "necessarily fail[ed] to plead facts sufficient to show that any such 'policy' was the 'moving force' behind his alleged 'constitutional injury.'" *Id.* at 13. Finally, the Court held that Mr. Juluke had "fail[ed] to plead a plausible civil-rights conspiracy claim" against OPDA because his allegations were "conclusory" and "[did] not even distinguish among the various 'Defendants.'" *Id.* at 14.

As explained further below, the Amended Complaint by Plaintiffs Gable and Hill suffers from many of the same defects this Court identified with respect to Mr. Juluke's complaint. Accordingly, the claims by Plaintiffs Gable and Hill should be dismissed.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Although the Court must "accept all well-pleaded facts as true," it should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quotation omitted).

## DISCUSSION

Assuming for the sake of argument that the Plaintiffs have adequately alleged a constitutional violation in connection with their criminal proceedings, they have not adequately

3

alleged the elements necessary to hold OPDA liable. "Three essential elements must be established for a municipality to face § 1983 liability." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc). "There must be (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Id.* "An official policy usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 389–90 (quotation omitted). However, "[a] city cannot be liable for an unwritten custom unless ***actual or constructive knowledge of such custom is attributable to a city policymaker***." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quotation omitted, emphasis added). The plaintiff "must demonstrate that the policy was implemented with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* at 390 (quotations omitted). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023). The Plaintiffs have not adequately pleaded any of these elements.

**I.     The Plaintiffs have not adequately alleged that OPDA maintained any unconstitutional policies related to disclosure of evidence.**

This Court previously noted that Mr. Juluke's complaint did not "allege that an official written policy instructed OPDA prosecutors to withhold exculpatory evidence." Doc. No. 153 at 7. Similarly, Plaintiffs Gable and Hill do not allege any such facially unconstitutional policy directly instructing prosecutors to violate the constitutional rights of defendants. At best, the Plaintiffs allege that OPDA had a one-paragraph "written policy for turning over *Brady* evidence" that "contained numerous misstatements of law" and therefore failed to properly instruct Assistant District Attorneys. *See* Doc. No. 90 at ¶ 101. The Plaintiffs also complain of various policies that

OPDA allegedly *did not* have. They allege that OPDA did not have "a valid, written policy to prosecutors to guide their disclosure practices"; "did not have a policy to discipline ADAs for choosing not to disclose *Brady* evidence"; "did not supervise prosecutors' handling of *Brady* obligations"; "did not require supervisors to review *Brady* compliance as a part of trial preparation or prosecutors to report the *Brady* violations of other prosecutors"; "did not have a policy to ensure that prosecutors found out about *Brady* evidence that involved witnesses in other cases occurring simultaneous with a prosecution"; had "no policy that mandated coordination among prosecutors to ensure prosecutors were aware of *Brady* materials in a related case file"; and did not require prosecutors "to request *Brady* materials from the police or inspect police files for *Brady* material." *See* Doc. No. 90 at ¶¶ 105, 108. Yet none of these alleged failings reflects a facially unconstitutional policy.

Because the Plaintiffs have not adequately alleged that OPDA promulgated official policies that are facially unconstitutional and that caused their alleged injuries, they must demonstrate deliberate indifference on the part of OPDA's alleged policymaker, Harry Connick. *See, e.g.*, *Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023).[1] As explained further below, they have failed to do so.

## II. The Plaintiffs have not adequately alleged that OPDA's policymaker acted with deliberate indifference.

The Plaintiffs also have not adequately alleged that OPDA's alleged policymaker, Harry Connick, acted with deliberate indifference in maintaining policies concerning *Brady* disclosures.

---

[1] *See also Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) ("Armstrong does not allege that an officially promulgated policy instructed police to investigate using unconstitutional methods. . . . Therefore, she had to rely on a custom or practice so common and well settled as to constitute a custom that fairly represents municipal policy, and actual or constructive knowledge of such custom must be attributable to the policymaker.") (quotations omitted).

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *Id.* (quotation omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted). "Knowledge on the part of the policymaker that a constitutional violation ***will most likely result*** from a given official custom or policy is a *sine qua non* of municipal liability under section 1983." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (emphasis added). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez*, 904 F.3d at 391 (quotation omitted).

"Because the standard for municipal fault is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quotations omitted); *see also Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) ("A pattern requires similarly, specificity, and sufficiently numerous prior incidents."). The Fifth Circuit has explained that only "very similar violations" can provide the "notice" to policymakers that would give rise to deliberate indifference. *See Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019); *see also Robinson v. Midland County*, 80 F.4th 704, 710 n.3 (5th Cir. 2023) ("The deaths of other inmates are not sufficiently similar to put the county on notice of a failure to provide adequate medical care because only one of them is alleged to have involved a failure to follow proper

6

procedures, and none of the allegations involve fabrication of medical reports."); *Johnson v. Harris County*, 83 F.4th 941, 946–47 (5th Cir. 2023) (The "specific facts" of the alleged practice "must be similar to the case at hand: Prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.") (quotation omitted).

The Plaintiffs allege that OPDA "committed numerous *Brady* violations over the years, including during the time of the arrest, prosecution, and conviction of the Plaintiffs between 1994 and 1996." Doc. No. 90 at ¶ 102. They allege that "[b]etween October 1992 and August 1997 . . . there were 18 *Brady* violations involving Connick's office in cases that went to trial." *Id.* at ¶ 103. They further allege that "[b]etween May 1991 and October 1996, there were 13 reversals of convictions in Orleans Parish because of *Brady* violations." *Id.* However, the Complaint identifies only **one** case allegedly involving a *Brady* violation—the 1995 decision in *Kyles v. Whitley*. *See id.* at ¶ 104. With respect to the other alleged cases, the Complaint does not identify, among other things, (1) the case name; (2) when the alleged *Brady* violation occurred; (3) when, if ever, a court determined that a *Brady* violation occurred; (4) the specific evidence that was allegedly withheld; or (5) any explanation as to *why* the evidence was allegedly withheld.

In its recent decision on OPDA's motion to dismiss Mr. Juluke's claims, the Court considered Mr. Juluke's conclusory allegation that OPDA had violated *Brady* in 13 other cases with published decisions. *See* Doc. No. 153 at 10. Although Mr. Juluke had identified the alleged cases through citations to the decisions, *see* Doc. No. 54 at ¶ 120, the Court nevertheless held that Mr. Juluke did "not allege specific facts from which the Court can plausibly infer that the alleged *Brady* violations in the cited cases are similar enough to the alleged *Brady* violations in this case." Doc. No. 153 at 10. Here, Plaintiffs Gable and Hill have not even provided citations to the alleged *Brady* cases; in fact, these cases are not identified or referenced in any way. The blanket assertion

that all of these unidentified cases involved "similar" *Brady* violations—"not disclosing impeachment evidence of eyewitnesses as well as the failure to look for *Brady* evidence in police files"—is no substitute for factual allegations that would *show* whether the Plaintiffs' characterization is accurate. Such allegations fall far short of showing a pattern of similar constitutional violations that could have plausibly put OPDA's policymaker on notice of a problem with OPDA's policies.

Moreover, even if the Court were to credit the Plaintiffs' conclusory allegations about the number of *Brady* violations in other cases, these numbers would be all but meaningless because the Plaintiffs fail to include the necessary context—such as the number of cases prosecuted—to put these numbers in perspective. This is illustrated by the Fifth's Circuit's recent decision in *Verastique v. City of Dallas*, 106 F.4th 427 (5th Cir. 2024).

In *Verastique*, plaintiffs alleged that a Dallas police officer, Roger Rudloff, used excessive force while arresting them during widespread protests. They sought to hold the City of Dallas liable under *Monell*, alleging that there were 19 prior complaints of misconduct ***by Mr. Rudloff*** over 23 years. However, the Fifth Circuit affirmed the district court's dismissal of the claim on the pleadings, concluding that the other incidents were "not sufficiently similar, specific, or numerous." *See Verastique*, 106 F.4th at 432–34. The Fifth Circuit first explained that the allegations regarding the 19 other incidents were "devoid of critical factual enhancement," including facts that would have elucidated how and why the incidents occurred: "Plaintiffs, for example, cite five incidents allegedly involving a flashlight or nightstick. Some are listed incident-by-incident. But all still remain totally devoid of critical facts. What prompted the encounters? Did the individuals threaten Rudloff with physical harm? Were they attempting to resist arrest?" *Id.* at 432; *see also Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) (holding that only "very similar

8

violations" can provide the "notice" to policymakers that would give rise to deliberate indifference); *Robinson v. Midland County*, 80 F.4th 704, 710 n.3 (5th Cir. 2023) ("The deaths of other inmates are not sufficiently similar to put the county on notice of a failure to provide adequate medical care because only one of them is alleged to have involved a failure to follow proper procedures, and none of the allegations involve fabrication of medical reports.").

In *Verastique*, the Fifth Circuit went on to explain that, even assuming these other alleged incidents were "sufficiently specific and similar" to the constitutional violations alleged in the lawsuit, they were insufficient as a matter of law to "create a pattern capable of providing constructive notice":

> It took twenty-three years to amass the nineteen incidents mentioned in the complaint. Plaintiffs posit that the protracted time span works in their favor. In their view, the fact that the incidents occurred over two decades further evinces a consistent pattern of failed discipline. Incorrect.
>
> Given a constant number of incidents, a longer time span yields a *lower rate* of violations—*militating against* constructive notice. Nineteen allegations over the span of twenty-three years yields a mere annualized incident rate of 0.826. In other words: Plaintiffs—at most—show that, for over two decades, Rudloff, on average, received *fewer than one accusation of misconduct per year*.

*Verastique*, 106 F.4th at 433–34.

The Fifth Circuit further explained that the complaint failed to provide information "such as department size and number of arrests" that would "provide the context necessary to evaluate whether an alleged department-wide pattern is so obvious as to impart constructive notice." *Verastique*, 106 F.4th at 434. The Fifth Circuit explained that "it is *impossible* to identify the existence of a pattern—much less one that imparts constructive notice," without such context. *Id.* That is because "[g]iven a constant number of incidents, the percentage of conduct supporting a pattern of illegality shrinks as the size of the police department or the number of arrests increases." *Id.* Thus, the plaintiffs failed to show "whether nineteen incidents over twenty-three years is

sufficiently frequent to be obvious in the context of [the Dallas Police Department]," which "employs 3,200 to 3,300 officers and serves one of the largest cities in the nation." *Id.* at 10.

Critically, the allegations in *Verastique* involved 19 incidents *by a single police officer*— not across the entire police department. Applying the same standard, the Plaintiffs' conclusory allegations of 18 *Brady* violations or 13 *Brady* reversals in a five-year period do not come close to alleging a pattern that has "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017).[2]

More recently, in *Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025), the Fifth Circuit held that the plaintiff failed to adequately allege a "custom of allowing inmate-on-inmate violence by failing to separate violent and non-violent inmates" at the Richland Parish Detention Center. The Fifth Circuit noted that the plaintiff had identified "six instances in which inmates attacked others but were later returned to their dormitory." *Id.* The Fifth Circuit explained, however, that the plaintiff had "fail[ed] to identify the jail personnel who were present for or involved in the violent incidents." *Id.* The Fifth Circuit further explained that these incidents were "dissimilar to" the attack on the plaintiff, and that they "occurred over the course of several months, were motivated by differing factors, and took place in different locations." *Id.* The Fifth Circuit concluded that "[t]hese alleged incidents are insufficient to allege a custom or policy of tolerating

---

[2] *See also Peterson v. City of Fort Worth*, 588 F.3d 838, 852 (5th Cir. 2009) ("Although the record omits any evidence of the department's size or the number of its arrests, the department's own website indicates that it presently employs more than 1,500 officers, and that there were more than 67,000 incidents of crime in the last year alone. Given the department's size, and absent any evidence of its total number of arrests during the same time period, 27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct. To hold otherwise would be effectively to hold the City liable on the theory of respondeat superior, which is expressly prohibited by *Monell*.").

widespread, unprovoked violence in the detention center or to put the officials on notice of the repeated constitutional violations." *Id.*

As explained in *Connick v. Thompson*, "*Brady* mistakes are inevitable. So are all species of error routinely confronted by prosecutors: losing a *Batson* claim; crossing the line in closing argument; or eliciting hearsay that violates the Confrontation Clause." *Connick v. Thompson*, 563 U.S. 51, 73 (2011) (Scalia, J., concurring). Finding deliberate indifference based on *Brady* violations in a miniscule percentage of cases "would repeal the law of *Monell* in favor of the Law of Large Numbers." *Id.*

**III.    The Plaintiffs have not adequately alleged that OPDA's policies were the "moving force" causing a violation of their constitutional rights.**

Even if the Plaintiffs could establish that OPDA had constitutionally defective policies concerning *Brady* disclosures that were adopted or maintained with deliberate indifference, their allegations do not establish that such policies were the "moving force" of the alleged *Brady* violations in their case—*i.e.*, that the prosecutor or prosecutors responsible for the disclosures in their criminal case (who are not even identified) were acting pursuant to such a policy when they allegedly failed to disclose exculpatory evidence.

The Complaint identifies nine former NOPD officers by name and describes specific misconduct allegedly committed by each of them. *See, e.g.*, Doc. No. 90 at ¶¶ 19–27, 32–49, 98. By contrast, the Complaint does not name any of the Assistant District Attorneys who worked on the Plaintiffs' prosecution or include any allegations concerning their actions. The Complaint merely alleges that "Connick's office" did not disclose various exculpatory items. *See id.* at ¶¶ 51–60. The Complaint offers no explanation as to *why* this evidence was allegedly not disclosed, and it provides absolutely no plausible basis to conclude or infer that the alleged withholding of evidence in his case is attributable to OPDA's official policies, as opposed to other plausible

11

possibilities. This claim must therefore be dismissed for failure to establish the essential element of causation. *See, e.g.*, *Hutchinson v. Terrebonne Parish Consol. Gov't*, No. 23-cv-5681, 2025 WL 592776, at *2 (E.D. La. Feb. 24, 2025) (Long, J.) (dismissing § 1983 claim against parish for failure to adequately allege that injury was "directly caused" by a municipal policy); *Chatman v. Plaquemines Parish*, No. 23-cv-1688, 2025 WL 270627, at *1 (E.D. La. Jan. 22, 2025) (Long, J.) (granting summary judgment where plaintiff could not show that alleged constitutional violation was caused by the policies of the Sheriff's office).

### IV.    The Plaintiffs have not adequately alleged a claim for conspiracy against OPDA.

In addition to their *Monell* claim against OPDA based on alleged suppression of exculpatory evidence (Count 7), the Plaintiffs also include, in Count 5, a § 1983 claim for "conspiracy" against "all defendants." *See* Doc. No. 90 at ¶¶ 156–161. They allege that "[t]he Defendants agreed among themselves and other individuals (including those yet unknown) to act in concert to deprive Plaintiffs of their constitutional rights." *Id.* at ¶ 157. But as discussed above, the Complaint does not include any allegations regarding the specific acts of any of the OPDA prosecutors who worked on the Plaintiffs' case—much less any facts plausibly demonstrating that they conspired to violate the Plaintiffs' constitutional rights.

Furthermore, the Complaint alleges that the "agreement" was formed "before Plaintiffs were arrested," Doc. No. 90 at ¶ 157, which strongly implies that prosecutors were not involved. The Plaintiffs also list five alleged "overt acts in furtherance of the conspiracy," none of which involves activities that prosecutors would typically be involved in. *See id.* at ¶ 158. Finally, the Plaintiffs allege that the alleged "misconduct" forming the basis of the conspiracy "was undertaken pursuant to the policies and practices of the New Orleans Police Department"—not OPDA. *See id.* at ¶ 161. In short, the Plaintiffs have not stated a cognizable claim for conspiracy against OPDA. *See, e.g.*, *Floyd v. Dillmann*, 614 F. Supp. 3d 454, 461 (E.D. La. 2022) (Milazzo, J.) (dismissing

conspiracy claim against former NOPD lieutenant where allegations did not clearly specify his involvement).

This Court previously held that Mr. Juluke failed to adequately plead a conspiracy claim against OPDA in his First Amended Complaint. *See* Doc. No. 153 at 13. Because Plaintiffs Gable and Hill do not include any substantive allegations of OPDA's involvement in a conspiracy beyond what Mr. Juluke alleged, their claim should be dismissed for the same reasons.

## CONCLUSION

For the reasons set forth above, the claims by Plaintiff Kunta Gable and Sidney Hill against OPDA (Counts 5 and 7) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Respectfully submitted,

 /s/ Matthew J. Paul
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

13