**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | ) | |
| BERNELL JULUKE | ) | |
| | ) | Case No. 23-3111 |
| Plaintiff, | ) | c/w Case No. 23-6203 |
| | ) | |
| v. | ) | Motion applies to 23-6203 |
| | ) | |
| | ) | Judge Brandon S. Long |
| LEN DAVIS, *et al.* | ) | Section O |
| | ) | |
| | ) | Magistrate Judge Donna P. Currault |
| Defendants. | ) | Division 2 |
| | ) | |

**PLAINTIFFS KUNTA GABLE AND SIDNEY HILL'S RESPONSE IN**
**OPPOSITION TO DEFENDANT WILLIAMS'S MOTION TO DISMISS**

Plaintiffs Kunta Gable and Sidney Hill, by their undersigned attorneys, hereby respond to

Defendant Jason Williams's second Motion to Dismiss, Dkt. 164, stating as follows:

**INTRODUCTION**

In 1994, the Orleans Parish District Attorney's Office ("OPDA") prosecuted three

teenagers—Kunta Gable, Sidney Hill, and Bernell Juluke—for a murder they did not commit.

After they were accused of the crime, the OPDA, under the leadership of Harry Connick, Sr., failed

to disclose material exculpatory evidence in violation of their rights under the United States

Constitution. As a result, a jury convicted the three teenagers of second-degree murder. They

served 28 years in prison before their convictions were finally vacated in 2022. Plaintiffs Gable

and Hill have sued the Orleans Parish District Attorney under 42 U.S.C. § 1983. Bernell Juluke

filed a separate action, *Juluke v. Davis*, No. 2:23-cv-31111, which has been consolidated with this

case.

Now, over a year after District Attorney Jason Williams first moved to dismiss Gable and Hill's complaint—a motion this Court denied—he does so again, this time on an entirely different basis: that Gable and Hill fail to plausibly allege elements of their *Monell* claim against the OPDA.[1] The Court should deny the motion on the straightforward basis that the District Attorney could have, but failed, to raise these arguments in his first motion and that to provide a second opportunity at dismissal would unnecessarily delay this litigation.

As for the merits, the District Attorney first argues that Gable and Hill fail to sufficiently allege an official policy. But the District Attorney ignores the fact that the official *Brady* policy in force at all relevant times at the OPDA was facially unconstitutional because it contained affirmative misstatements of law that for decades under Connick's leadership "allow[ed] or compel[led] unconstitutional conduct." *Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023). Given the OPDA's facially unconstitutional *Brady* policy, the Court's *Monell* analysis ends there because the other two elements—deliberate indifference and causation—are then necessarily satisfied. *See Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016) ("Where the claim is that the policy '*itself* violates federal law, or directs an employee to do so,' it is unnecessary to prove a heightened level of culpability on the part of the policymakers."); *Edwards v. City of Balch Springs*, 70 F.4th 302, 308 (5th Cir. 2023) (a "facially unconstitutional policy's mere existence satisfies the moving-force requirement" under *Monell*).

But even if the Court's analysis proceeds to the latter elements, Gable and Hill sufficiently allege deliberate indifference and causation. As detailed below, the allegations in their Amended Complaint show that the OPDA had a pattern of rampant *Brady* violations—highly similar to the

---

[1] The District Attorney concedes for purposes of his motion that Gable and Hill have plausibly alleged an underlying constitutional violation. Dkt. 164-1 at 3.

violations committed in Plaintiffs' underlying criminal case—that caused numerous wrongful convictions and resulted in reversible error. Yet with Connick at the helm, the OPDA took no remedial action. *See Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (affirming liability under *Monell* where municipality failed to change policies or to discipline or reprimand officials, permitting jury to conclude that the complained-of practices were "accepted as the way things are done and have been done" in that city); *Oliver v. Gusman*, 611 F. Supp. 3d 290, 304 (E.D. La. 2020) (holding plaintiff satisfied deliberate indifference element of municipal liability claim where the need for training and remedial action "was obvious"). Accordingly, the District Attorney's late-blooming, successive motion to dismiss should be denied.[2]

## BACKGROUND

### I.      Facts

New Orleans police arrested Gable, Hill, and Juluke for the murder of Rondell Santinac on August 22, 1994. Dkt. 90 ("Am. Compl.") ¶ 1. The three teenagers were prosecuted by the Orleans Parish District Attorney's Office. *Id.* ¶¶ 50-58, 109-11. Under the stewardship of Harry Connick Sr., the OPDA and its attorneys routinely withheld material exculpatory evidence from the defendants it prosecuted, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. *Id.* ¶¶ 99-108. In accordance with these policies and practices, the attorneys prosecuting Gable, Hill, and Juluke withheld that: (1) claimed eyewitness Samuel Raiford gave grand jury testimony that conflicted with his trial testimony; (2) Raiford initially provided a description of Santinac's killer that did not match any of the defendants, (3) police pressured Raiford to identify Gable, Hill, and Juluke in an unconstitutional line-up, and (4) Raiford committed perjury shortly before he

---

[2] Gable and Hill concede that as pled, they have not stated a conspiracy claim against the District Attorney.

testified in Gable, Hill, and Juluke's criminal trial. *Id.* ¶¶ 52-60. Without the benefit of this exculpatory evidence, a jury found each of the defendants guilty of second-degree murder, and they were sentenced to life in prison without the possibility of parole. *Id.* ¶ 111.

When the OPDA took a second look at these convictions more than two decades later, the office concluded that the verdicts had been secured "while the jury was unaware of significant evidence that undermined the State's case and exculpated" the defendants. *Id.* ¶ 114. The OPDA further concluded that Gable, Hill, and Juluke's "convictions were obtained in violation of the Constitution and may well have resulted in the conviction of three innocent teenagers." *Id.* ¶ 115. On a joint motion, Louisiana District Court Judge Tracey Flemings-Davillier vacated all three men's convictions. *Id.*

After their convictions were vacated, Gable and Hill filed this suit under 42 U.S.C. § 1983 and Louisiana state law, naming Jason Williams in his official capacity as District Attorney. *Id.* ¶¶ 29, 170-76; *see also Reeder v. Williams*, No. 22-cv-4614, 2023 WL 2771481, at *2 (E.D. La. Apr. 4, 2023) ("Although all of the tortious conduct . . . occurred well before Williams took office, as the current district attorney, Williams, in his official capacity, is the proper defendant."). At all relevant times to the facts at issue, however, Harry Connick, Sr. served as District Attorney and the Office's final policymaker. Am. Compl. ¶¶ 29, 172-74. Gable and Hill allege that the OPDA violated their constitutional rights by withholding and failing to properly search for exculpatory evidence. *Id.* ¶ 51.

Gable and Hill further allege that their wrongful convictions were no isolated incident. Rather, they were caused by systemic deficiencies, including a facially unconstitutional OPDA

4

*Brady* policy.[3] *Id.* ¶ 100-02. Indeed, the policy governing the handling of *Brady* evidence contained express misstatements of law, inaccurately stating that *Brady* obligations are triggered by judicial order in response to a defense request, rather than a self-executing obligation that a prosecutor must comply with without any request. *Id.* The policy further provided that *Brady* disclosure occurs in most (rather than all) cases. *Id.* The policy also directly conflicts "with a prosecutor's obligation to inspect the police files for *Brady* evidence." *Id.* Despite these glaring inaccuracies in the OPDA's *Brady* policy, the office maintained the status quo for decades—the policy was never revised during Connick's tenure as District Attorney. *Id.* ¶ 101. And in the time that Connick oversaw the office, the OPDA committed numerous *Brady* violations that led to wrongful convictions. *Id.* ¶ 103.

In addition to the policy's blatant legal misstatements, the OPDA did not maintain a written policy to guide disclosure practice. *Id.* ¶ 105. And no policy disciplined line attorneys for opting not to disclose *Brady* evidence, even when as here, those failures resulted in wrongful convictions. *Id.* No policy required supervising attorneys to review subordinates' *Brady* compliance or report *Brady* violations committed by other prosecutors. *Id.* The OPDA also failed to maintain discovery policies or practices that made coordinating within the office possible to ensure prosecutors were aware of *Brady* evidence in related cases. *Id.* ¶ 108. When the OPDA became aware of *Brady* violations, it did not even track those violations, much less take appropriate corrective action. Instead, decisionmakers deliberately turned a blind eye to patterns of recurring violations when they should have intervened to stop them. *Id.* ¶ 106.

---

[3] District Attorney Leon Cannizzaro who served five years after Connick remarked that Connick's tenure was marked by "bad policy decisions" that "became institutional." Am. Compl. ¶ 99.

In the five-year span from 1992 to 1997 (which includes the period of Plaintiffs' prosecution and conviction), there were at least 18 *Brady* violations in cases that went to trial, including 13 that resulted in reversed convictions. *Id.* In those criminal cases—as in Plaintiffs'— prosecutors did not look for *Brady* evidence in police files and failed to disclose impeachment evidence. *Id.* ¶ 104. Less than a year before Plaintiffs' criminal trial, the Supreme Court explicitly excoriated the OPDA for withholding *Brady* material in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). *Id.* Yet the OPDA still failed to correct course.

## II.    Procedural History

After their convictions were vacated in 2022, Gable and Hill sued the Orleans Parish District Attorney under 42 U.S.C. § 1983.[4] In January 2024, the District Attorney moved to dismiss the *Monell* claim asserted against him by Juluke (raising many of the same arguments it now raises in this motion). *See* Dkt. 66-1 at 6-11. Two months *later*, in March 2024, the District Attorney also moved to dismiss Gable and Hill's claims for failure to state a claim *but only* on the limited basis that the policymakers relevant to Gable and Hill's *Monell* claim against the OPDA were acting on behalf of the State of Louisiana, not the District Attorney's Office. Dkt. 107. The District Attorney did not argue—even though he could have—that Gable and Hill's *Monell* claim should be dismissed on the merits. *See generally id.* And at no point during the 11 months that the motion was pending did the District Attorney seek leave to add any such arguments. On February 26, 2025, in a two-page order, this Court disposed of the District Attorney's motion to dismiss against Gable and Hill, recognizing that judges across the District have repeatedly considered and

---

[4] As noted, Juluke filed a separate action, *Juluke v. Davis*, No. 2:23-cv-31111, which has been consolidated with this case.

uniformly rejected that argument. *See* Dkt. 155 at 2 & n.4. The Court, however, granted the District Attorney's motion to dismiss Juluke's *Monell* claim but permitted him leave to amend.

After the District Attorney's motion to dismiss was denied as to Gable and Hill, the District Attorney moved for an extension of time to file its responsive pleading. Dkt. 158. In that filing, the District Attorney represented to the Court that it was "in the process of investigating and drafting an answer to [Gable and Hill's] First Amended Complaint" and that "additional time was needed to prepare OPDA's answer." *Id.* at 1. But instead of answering Gable and Hill's allegations, the District Attorney now attempts a second bite at the apple, filing a second motion to dismiss for failure to state a claim and raising arguments that plainly could have been raised in the first motion.

In his late-blooming motion to dismiss, the District Attorney argues that Gable and Hill fail to plausibly allege: (1) an unconstitutional policy, custom, or widespread practice; (2) that the OPDA was deliberately indifferent to any such policy, custom, or practice; and (3) any causal link between any such policy or practice and Gable and Hill's underlying constitutional violation. The Court should exercise its discretion and deny the District Attorney's second attempt at dismissal because it unnecessarily delays these proceedings. But even if the Court reaches the merits, those arguments should be rejected, and the District Attorney's motion denied.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is disfavored and rarely granted. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). When considering such a motion, courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016). If the complaint contains sufficient facts to "state a claim for relief that is plausible on its face," the motion to dismiss must be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the

plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<strong>ARGUMENT</strong>

Section 1983 imposes liability on any person "who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotations omitted). Although states and their officials are not "persons" subject to § 1983 liability, a municipality may be held liable under the statute if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[5] *Groden*, 826 F.3d at 283 (alteration omitted) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).

**I.    The Court Should Exercise Its Discretion and Deny the District Attorney's Successive Motion to Dismiss Because It Unnecessarily Delays This Litigation**

The Court should deny the District Attorney's motion to dismiss on the straightforward basis that the District Attorney could have—but did not—raise these arguments in his first motion to dismiss. Thus, the District Attorney's second motion substantially delays the case

Federal Rule of Civil Procedure 12(g) provides that a party that previously made a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Motions under Rule 12(b)(6) are

---

[5] Under Louisiana law, a district attorney is unquestionably considered a policymaker. The District Attorney does not dispute that Gable and Hill have "adequately identified" Connick as "a policymaker with final policymaking authority under state law." *Flanks v. City of New Orleans*, No. 23-cv-6897, 2025 WL 660037, at *8 (E.D. La. Feb. 28, 2025).

excepted from that prohibition. *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017). But the Court retains the discretion to deny such motions when, as here, the successive Rule 12(b)(6) motion leads to "harm," including "unnecessary delay." *Polar Pro Filters Inc. v. FrogSlayer, LLC*, No. 19-cv-1706, 2020 WL 1987432, at *4 (S.D. Tex. Apr. 27, 2020) (denying successive motion to dismiss in part due to unnecessary delay).

Here, consideration of the District Attorney's second motion to dismiss would clearly lead to substantial unnecessary delay. Gable and Hill filed their Amended Complaint in February 2024, Dkt. 90, and the District Attorney first moved to dismiss against Gable and Hill in March 2024. Dkt. 107. This Court denied that motion in February 2025. Dkt. 155. Around that time, the District Attorney also moved to dismiss against Juluke, raising many of these arguments. *See generally* Dkt. 66. At no point while the first motion to dismiss was pending did the District Attorney move to supplement its then-pending motion to dismiss, even though it could have. *Cf. Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 648 (W.D. Tex. 2006) ("The practical effect of considering [d]efendant's second 12(b)(6) motion would not be further delay, since [d]efendant's original motion was still pending when the second motion was submitted."). And even after the first motion was denied, the District Attorney moved to extend its time to answer. *See* Dkt. 158. In that motion, the District Attorney stated that it was "in the process of investigating and drafting an answer to [Gable and Hill's] First Amended Complaint" and that "additional time was needed to prepare OPDA's answer." *Id.* at 1. That was obviously inaccurate, as the District Attorney instead elected to file a second motion to dismiss, raising arguments that he could have raised—and in fact did raise against Juluke—but did not raise against Gable and Hill. The District Attorney's motion should be denied on that ground alone.

### II.    Gable and Hill Sufficiently Allege an Official Policy

The OPDA argues that Gable and Hill fail to allege an official policy. Dkt. 164-1 at 4-5. The OPDA is wrong. Under *Monell*, there are two relevant ways to establish an official policy: "(1) written policy statements, ordinances, or regulations" or "(2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023). Gable and Hill prevail under either route.

### A.    The OPDA *Brady* Policy in Force at the Time of Plaintiffs' Wrongful Convictions Was Facially Unconstitutional

Gable and Hill allege that the OPDA maintained a facially unconstitutional *Brady* policy. "An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023).

Here, the OPDA's *Brady* policy—in force at the time of Plaintiffs' wrongful convictions—was itself unconstitutional because it contained affirmative misstatements of law. Am. Compl. ¶ 101. For instance, the policy instructed that prosecutors were not required to disclose *Brady* material unless the defense requested it. *Id.* That is obviously not the law—a prosecutor's *Brady* obligation is self-executing. *See, e.g.*, *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."); *United States v. Garrett*, 238 F.3d 293, 302 (5th Cir. 2000) ("The *Brady* line of cases announces no rule of discovery but the self-executing constitutional rule that due process requires disclosure by the prosecution of evidence favorable to the accused that is material to guilt or punishment."). And to be sure, the failure to follow protocols consistent with the Supreme Court's *Brady* decision violates the constitutional rights of criminal defendants, making this policy facially unconstitutional. *See Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016) ("If the city had

a policy of arresting people without probable cause in retaliation for annoying-but-protected speech, such a policy would be unconstitutional . . . Since Groden has alleged that the city had exactly this policy, he successfully alleged that the city had an unconstitutional policy, and the district court erred by dismissing his complaint on that ground."). Gable and Hill have thus plausibly alleged a facially unconstitutional policy.

The Court's consideration of the OPDA's motion to dismiss should end there—the Court need not reach the deliberate indifference or causation elements because those are necessarily satisfied when a policy is facially unconstitutional. *See Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016) ("Where the claim is that the policy '*itself* violates federal law, or directs an employee to do so,' it is unnecessary to prove a heightened level of culpability on the part of the policymakers."); *Edwards v. City of Balch Springs*, 70 F.4th 302, 308 (5th Cir. 2023) (a "facially unconstitutional policy's mere existence satisfies the moving-force requirement that is *Monell*'s third element").

### B. Gable and Hill Sufficiently Allege a Widespread Practice That Represents Municipal Policy

Yet even if the Court concludes that Gable and Hill have not adequately alleged a facially unconstitutional policy, they have also plausibly alleged "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *St. Maron Props.*, 78 F.4th at 760. Indeed, the Fifth Circuit has held that the failure to take remedial action in the face of repeated constitutional violations "shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020).

Here, Gable and Hill allege that the OPDA had no policy that disciplined line attorneys for opting not to disclose *Brady* evidence, even when as here, those failures resulted in reversible

11

*Brady* error in at least 12 criminal trials. Am. Compl. ¶ 104-05. No policy required supervising attorneys to review *Brady* compliance or report *Brady* violations committed by other prosecutors. *Id.* What's more, the OPDA's policies and practices did not require prosecutors to learn of *Brady* material contained in police files despite a clear Supreme Court mandate one year before Plaintiffs' trial. Compare *id.* at ¶ 108 *with Kyles*, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). And even when the OPDA became aware of *Brady* violations, it failed to track those violations in a way that permitted it to take appropriate corrective action. Am. Compl. ¶ 106; *see also Duvall v. Dallas Cnty.*, 631 F.3d 203, 208 (5th Cir. 2011) (upholding jury verdict finding the existence of a custom or policy when the "Sheriff and other jail officials had long known of the widespread problems" at the jail yet continued the status quo). Despite the glaring legal inaccuracies in the OPDA's policies, the office continued carrying out these policies and practices, including after Plaintiffs' wrongful convictions. Am. Compl. ¶¶ 102-08; *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.18 (5th Cir. 2001) (explaining that post-incident actions can ratify the prior misconduct for purposes of a *Monell* claim).

In short, Gable and Hill have plausibly alleged a widespread practice that amounts to an official policy.

> **C.    Gable and Hill Have Plausibly Alleged the OPDA's Deliberate Indifference**

The District Attorney argues that Gable and Hill fail to plausibly allege the OPDA's deliberate indifference. The District Attorney is wrong again. To prevail on this element of *Monell* liability, a plaintiff must allege that the official policy or widespread practice was maintained "with deliberate indifference to a constitutionally protected right." "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that

failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) (quoting *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018)). Deliberate indifference can also be established from "a pattern of constitutional violations or, absent proof of a pattern, from 'showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Id.* at 637-38 (quoting *Littell*, 894 F.3d 616 at 624).

The District Attorney argues that Gable and Hill have not plead deliberate indifference because—on the District Attorney's telling—Gable and Hill fail to catalog each alleged *Brady* violation in sufficient detail. But that stretches the demands of Rule 8, and in any event, Gable and Hill allege deliberate indifference in specific detail. *See, e.g.*, *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 765–66 (5th Cir. 2019) ("A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)); *Mills v. City of Bogalusa*, No. 13-cv-5477, 2015 WL 4254145, at *7 (E.D. La. July 13, 2015) (articulating same principle in denying motion to dismiss *Monell* claim).

Here, Gable and Hill allege that between October 1992 and August 1997 (a time period that includes when the then-teenagers were wrongfully convicted) there were 18 *Brady* violations involving Connick's office in cases that went to trial. Am. Compl. ¶ 103. And between May 1991 and October 1996, there were 13 reversals of convictions due to OPDA prosecutors' failures to adhere to their obligations under *Brady*. *Id.* And to be sure, those violations were "fairly similar" to the ones that infected Plaintiffs' criminal trial—they included failing to disclose impeachment evidence of eyewitnesses as well as the failure to learn of *Brady* evidence from police—which Fifth Circuit has held is sufficient at the pleading stage. *Id.*; *Est. of Davis ex rel. McCully v. City*

13

*of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (noting that at the dismissal stage prior instances of misconduct need only be "fairly similar"); *see also Moses v. City of New Orleans,* No. 24-cv-1768, 2025 WL 816296, at *7 (E.D. La. Mar. 14, 2025) (denying motion to dismiss and observing that prior instances of prosecutorial misconduct "violations need not be identical to those in [the plaintiff's] case to state claim); *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 947–48 (W.D. Tex. 2018) (denying motion to dismiss *Monell* claim where plaintiff alleged eight prior incidents, all of which "involved the alleged use of excessive force" against "mentally ill persons").

Furthermore, shortly before Plaintiffs' wrongful convictions, the Supreme Court issued its decision in *Kyles v. Whitley*, 514 U.S. 419 (1995)—sharply criticizing the OPDA for just the kind of misconduct that occurred in this case. *See* Am. Compl. ¶ 104. In *Kyles*, the OPDA had suppressed evidence that would have undermined two eyewitness accounts and withheld evidence about the veracity of an important witness. 514 U.S. at 454. Yet even post-*Kyles*, the OPDA continued committing *Brady* violations—including in 12 major criminal trials—excluding Plaintiffs' criminal case. Am. Compl. ¶ 104. Taken together, these allegations—which include 18 *Brady* violations over a five-year period—sufficiently allege OPDA's deliberate indifference. *See Moses v. City of New Orleans*, No. 24-cv-1768, 2025 WL 816296, at *7 (E.D. La. Mar. 14, 2025) (denying District Attorney's motion to dismiss *Monell* claim where complaint alleged 30 cases with *Brady* violations over an 28-year period); *Flanks v. City of New Orleans*, No. 23-cv-6897, 2025 WL 660037, at *10 (E.D. La. Feb. 28, 2025) (denying District Attorney's motion to dismiss *Monell* claim where complaint alleged 26 *Brady* violations over an 18-year period). Indeed, the rate of known *Brady* violations alleged here—18 over a five-year period—exceeds the rates of *Brady* violations in *Moses* and *Flanks*.

In an attempt to get around the clear pattern of constitutional violations alleged by Gable

14

and Hill, the District Attorney relies on the Fifth Circuit's decisions in *Verastique v. City of Dallas*, 106 F.4th 427 (5th Cir.), *cert. denied*, 145 S. Ct. 772 (2024), but that case is distinguishable. Most notably, unlike here, the plaintiff in *Veristique* failed to demonstrate that the challenged policy was facially unconstitutional.[6] *Id.* at 435 (noting counsel's concession at oral argument that the challenged policy did not expressly permit arrests without probable cause).

Further, in *Verastique*, the court explained that the plaintiff's allegations were "incapable of showing the existence of any pattern of conduct," given the "stark factual dissimilarities" to the plaintiffs' experiences. *Id.* At 432. But here, Gable and Hill allege that the 18 OPDA *Brady* violations were highly analogous to the violations that led to their wrongful conviction—the violations included the failure to disclose "impeachment evidence of eyewitnesses as well as the failure to look for *Brady* evidence in police files." Am. Compl. ¶ 103; *see also Est. of Davis ex rel. McCully*, 406 F.3d at 383; *Moses,* 2025 WL 816296, at *7; *Ramirez*, 298 F. Supp. 3d at 947–48. On top of that, Gable and Hill allege additional OPDA failures around *Brady*, including the failure to "provide a valid, written policy to prosecutors to guide their disclosure practices," a lack of discipline for line prosecutors "even when that choice resulted in wrongful convictions" and a lack of supervision with regard to "*Brady* compliance." *Id.* ¶ 105; *see also Ramos v. Taylor*, 646 F. Supp. 3d 807, 824 (W.D. Tex. 2022) (failure to impose discipline relevant factor in establishing deliberate indifference for *Monell* claim).

The District Attorney also points to *Verastique* to show that the rate of *Brady* violations here was too low to constitute a "pattern capable of providing constructive notice." 106 F.4th at

---

[6] The court in *Verastique* also emphasized the discretion afforded to officers making arrests in explaining why the policy in that case was not facially unconstitutional. 106 F.4th at 435. But the split-second decision-making required when making arrests is different from the deliberate nature of withholding favorable evidence from a criminal defendant during a prosecution.

433. But the incident rate in *Verastique* of .826 violations per year is far lower than the approximately 3.6 known *Brady* violations per year that Gable and Hill allege occurred between 1992 and 1997. Am. Compl. ¶ 103. Making matters worse, following the Supreme Court's high-profile decision in *Kyles*, the OPDA persisted, committing reversible *Brady* error in at least 12 trials—an annual rate still higher than what the Fifth Circuit confronted in *Verastique*. *See Montano v. Orange Cnty.*, 842 F.3d 865, 876 (5th Cir. 2016) (upholding jury verdict on *Monell* claim where evidence established de facto policy was "standard" practice and not a "mere isolated incident," but rather a "pervasive pattern of serious deficiencies") (cleaned up). In all, these allegations permit a plausible inference that the District Attorney knew its *Brady* policy was unconstitutional and was deliberately indifferent in failing to correct it. *See Ramos*, 646 F. Supp. 3d at 824 (inferring from media coverage of a high-profile shooting that "the City knew of the shooting but deliberately chose not to discipline the officers involved."). Thus, *Verastique* does not help the District Attorney.

The District Attorney also cites *Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025). But in *Damond*, unlike here, the prior instances of misconduct were dissimilar "to the alleged attack on [plaintiff]." 127 F.4th at 939. Here, by contrast, the allegations regarding the OPDA's systemic *Brady* misconduct include suppressing impeachment evidence and failing to learn of *Brady* evidence contained in police files—the same kind of *Brady* misconduct that occurred in Gable and Hill's criminal proceedings. Am. Compl. ¶ 103.

In sum, Defendants' facially unconstitutional policy is sufficient to establish deliberate indifference. But even if the Court considers deliberate indifference separately, Gable and Hill have sufficiently alleged it.

16

### C.    Gable and Hill Plausibly Allege Causation

Gable and Hill have also sufficiently alleged a causal link between the OPDA's policy and their constitutional violations. The District Attorney first argues that Gable and Hill have inadequately pled causation because the Amended Complaint fails to identify the specific line attorneys that wrongfully convicted Plaintiffs. But to establish a *Monell* claim, a plaintiff need only "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation." *St. Maron Props.*, 78 F.4th at 761 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784–85 (1997)). The District Attorney cites no authority for the proposition that Gable and Hill are required to identify the specific line prosecutors who convicted them, particularly when, as here, the District Attorney does not dispute that Gable and Hill have plausibly alleged underlying constitutional violations. *See* Dkt. 164-1 at 3-4 ("Assuming for the sake of argument that the Plaintiffs have adequately alleged a constitutional violation in connection with their criminal proceedings, they have not adequately alleged the elements necessary to hold OPDA liable.").

Next, the District Attorney argues that Gable and Hill's allegations as to causation are infirm because they do not offer any explanation as to why *Brady* evidence was withheld from Plaintiffs' criminal trial and that the withholding of evidence was attributable to the OPDA's official policies. That argument again sets the bar far too high at the dismissal stage. *See, e.g.*, *Cicalese*, 924 F.3d at 765–66; *Mills*, 2015 WL 4254145, at *7. Gable and Hill's allegations detail the structural disregard for *Brady* that took place at the OPDA under Connick's stewardship over decades, including numerous instances of reversible *Brady* error. *See* Am. Compl. ¶¶ 99-108. As alleged, it is more than plausible that the OPDA's policies were the moving force of Gable and

17

Hills wrongful convictions. *Flanks v. City of New Orleans*, No. 23-cv-6897, 2025 WL 660037, at *12 (E.D. La. Feb. 28, 2025) ("As the Court held previously, Connick's alleged affirmative conduct in expressing disdain for *Brady* and rebuffing suggestions to ensure compliance with *Brady* is more than heightened negligence, demonstrating potential culpability and a causal link between the alleged widespread practice of *Brady* violations and the *Brady* violation claimed by Plaintiff in this case.").[7] The Court should conclude that Gable and Hill have plausibly alleged causation.

**CONCLUSION**

For the foregoing reasons, the Court should deny the District Attorney's late-blooming second motion to dismiss. If the Court grants the motion, however, it should afford Gable and Hill leave to amend.

Respectfully submitted,

/s/ David Schmutzer
Sarah Grady*
Jed W. Glickstein*
Vanessa Del Valle*
David Schmutzer*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184
david@kaplangrady.com

John N. Adcock (Bar No. 30372)
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
(504) 233-3125
jnadcock@gmail.com

---

[7] If the Court concludes that Plaintiffs have not plausibly alleged any element of their *Monell* claim against the District Attorney, the Court should permit them leave to amend, which "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

\* Admitted pro hac vice

*Attorneys for Plaintiffs*
*Kunta Gable and Sidney Hill*