**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| BERNELL JULUKE,<br><br>    *Plaintiff*,<br><br>v.<br><br>LEN DAVIS, *et al.*,<br><br>    *Defendants*. | Civil Action No. 23-03111<br>c/w 23-6203<br><br>Relates to: No. 23-cv-6203<br><br>Section O<br>Judge Brandon S. Long<br><br>Division 2<br>Magistrate Judge Donna Phillips Currault |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this reply to the opposition memorandum filed by Plaintiffs Kunta Gable and Sidney Hill (the "Plaintiffs"), Doc. No. 165, and in further support of OPDA's motion seeking dismissal of the Plaintiffs' claims, Doc. No. 164.

**I.    There is no legitimate reason for this Court to refuse to consider the merits of a motion that even the Plaintiffs admit is at least partially meritorious.**

The Plaintiffs argue that the Court should deny OPDA's motion without even considering the merits because OPDA "could have—but did not—raise these arguments in [its] first motion to dismiss." Doc. No. 165 at 8. Yet they concede that the motion is meritorious, at least in part, in that "they have not stated a conspiracy claim against the District Attorney." *Id.* at 3 n.2 They also concede that Rule 12(b)(6) motions are not subject to the prohibition in Rule 12 against "raising a defense or objection that was available to the party but omitted from its earlier motion." *Id.* at 8–9. They argue, however, that the Court should exercise its discretion to deny the motion outright because it would lead to "substantial unnecessary delay." *Id.* at 9.

1

To the extent the Court has the discretion to deny a well-supported motion under Rule 12(b)(6) without consideration of the merits (which is doubtful), the Court should not do so here. That would merely increase the delay and inefficiency because, as the Fifth Circuit has noted, the same arguments could (and would) be raised in a Rule 12(c) motion for judgment on the pleadings. *See Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017). Nor have the Plaintiffs identified any real delay. Discovery in this case has not been stayed and has proceeded notwithstanding the pendency of Rule 12(b)(6) motions. Additionally, this case is consolidated with a case (*Juluke*) in which the Court recently ordered the plaintiff to amend his pleadings, and a renewed Rule 12(b)(6) motion by OPDA is now pending. *See* Doc. Nos. 153, 160, 163.

The Plaintiffs note that OPDA recently requested additional time to prepare an "answer" to their Complaint. *See* Doc. No. 158. It is true that, after the denial of OPDA's earlier motion to dismiss the Plaintiffs' claims, Doc. No. 155, counsel for OPDA began preparing an answer. In doing so, it became undeniably clear that the defects this Court found with respect to Mr. Juluke's complaint, *see* Doc. No. 153, were present in the Complaint of Mr. Gable and Mr. Hill as well. Rather than go forward with litigation of claims that have not even been adequately alleged, OPDA elected to move for dismissal.

## II.    The Plaintiffs have not shown that OPDA has a facially unconstitutional policy.

The Plaintiffs allege that OPDA's "written policy for turning over *Brady* evidence" in effect at the time of their prosecution was "facially unconstitutional." Doc. No. 90 at ¶ 101; Doc. No. 165 at 10. They argue that the written policy "contained affirmative misstatements of law," in that it "instructed that prosecutors were not required to disclose *Brady* material unless the defense requested it." Doc. No. 165 at 10. But this is a misrepresentation of what the policy manual actually said. And the Court need not accept these misrepresentations as true—it can examine the document for itself. *See Whitfield v. City of New Orleans*, 431 F. Supp. 3d 818, 823 (E.D. La. 2019) (in

2

considering a Rule 12(b)(6) motion, courts may consider "documents incorporated into the complaint by reference or integral to the claim").

Section 5.25 of the OPDA policy manual, "Pre-Trial – Brady Material," states, in its entirety:

> In most cases, in response to the request of defense attorneys, the Judge orders the State to produce so called <u>Brady</u> material—that is, information in the possession of the State which is exculpatory regarding the defendant. The duty to produce <u>Brady</u> material is ongoing and continues throughout the entirety of the trial. Failure to produce <u>Brady</u> material has resulted in mistrials and reversals, as well as extended court battles over jeopardy issues. In all cases, a review of <u>Brady</u> issues, including apparently self-serving statements made by the defendant, must be included in a pre-trial conference and each Assistant must be familiar with the law regarding exculpatory information possessed by the State.[1]

This section did not instruct prosecutors that there is no obligation to disclose *Brady* material unless there is a request by the defense. It merely stated (accurately), as a factual matter, that requests for *Brady* material were made in most cases. This does not suggest or imply any limitation on prosecutors' *Brady* obligations, and the subsequent language rebuts any such interpretation—the policy instructs that a review of *Brady* issues must be included in **all** cases. The policy also makes clear that it is not, and does not purport to be, a comprehensive treatise on prosecutors' constitutional disclosure obligations. Instead, it instructs that each prosecutor "must be familiar with the law regarding exculpatory information possessed by the State."

"An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023). "But where such an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the

---

[1] *See* Exhibit 1, Section 5.25 of OPDA policy manual.

policymaker's deliberate indifference." *Id.* "[A] written policy is not facially unconstitutional just because it leaves out detailed guidance that might have averted a constitutional violation." *Id.* at 310 (quotation omitted). "If it were otherwise, a . . . policy would be facially constitutional only if it recited every jot and tittle of the applicable caselaw." *Id.*

Because Section 5.25 does not compel or affirmatively authorize prosecutors to suppress *Brady* evidence, it is not facially unconstitutional.

## III.  The Plaintiffs have not adequately alleged a pattern of constitutional violations that would have put OPDA's policymaker on notice of serious problems with his office's policies.

The Plaintiff argue that they have adequately alleged a "pattern of constitutional violations" by including a single paragraph in their Complaint alleging that "[b]etween October 1992 and August 1997, . . . there were 18 *Brady* violations involving Connick's office in cases that went to trial," and that "[b]etween May 1991 and October 1996, there were 13 reversals of convictions in Orleans Parish because of *Brady* violations." Doc. No. 165 at 13; Doc. No. 90 at ¶ 103; *see also* Doc. No. 90 at ¶ 104 (alleging that between 1995 and 2000, "Connick's office committed reversible *Brady* error in at least 12 major trials"). Yet with one exception (*Kyles v. Whitley*), they have not even provided the names of the purported cases.

In this Court's order finding Mr. Juluke's complaint to be inadequate, the Court discussed the showing required to adequately plead a municipal "custom, pattern, or practice of *Brady* violations." Doc. No. 153 at 7–12. Without even identifying the alleged cases at issue, the Plaintiffs certainly cannot "allege specific facts from which the Court can plausibly infer that the alleged *Brady* violations in the cited cases are similar enough to the alleged *Brady* violations in this case." *Id.* at 10.

**IV.    The Plaintiffs have not adequately alleged that OPDA's policies were the "moving force" causing a constitutional violation in their criminal case.**

As with Mr. Juluke's earlier complaint, because the Plaintiffs have failed to plausibly allege an official policy, they necessarily fail to show that any such policy was the moving force causing the alleged constitutional violation in their case. *See* Doc. No. 153 at 13.

The Plaintiffs argue that they can plausible allege "moving force" causation without even identifying the prosecutors who handled their case or providing any explanation at all as to how or why *Brady* evidence was allegedly withheld in their case. Doc. No. 165 at 16–17. Essentially, they argue that if they can allege a *Brady* violation and an unconstitutional policy, causation may be presumed. This is certainly not the law—causation is a separate element, and one that the Fifth Circuit has described as "rigorous" and "stringent" in § 1983 municipal liability cases. *See Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998); *see also id.* at 795 ("*Monell* set a high threshold for causation . . . ").

## CONCLUSION

For the reasons set forth above and in OPDA's original brief, the claims of Plaintiffs Kunta Gable and Sidney Hill should be dismissed for failure to state a claim.

5

Respectfully submitted,

*/s/ Matthew J. Paul*
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*

6